ALICE E. SCOTT, Appellant, v. PEOPLE'S MONTHLY COMPANY, Appellee.

No. 39831.

DECEMBER 13, 1929.

*John E. Groves* and *Mulvaney & Mulvancy,* for appellant.

*Judson E. Piper,* for appellee.

WAGNER, J.—The plaintiff seeks to recover the sum of $1,000 for the claimed performance by her of an alleged contract, growing out of an offer of prizes in a ''Word-building Contest.'' It

is her claim that she is entitled to the first prize ($1,000), for submitting to the defendant the "largest correct list of words" made from the letters in the word "determination." The defendant denied liability, upon the ground that the list submitted by plaintiff was not responsive to, and did not comply with, the terms and conditions of the offer of prizes made by it, and that the same did not constitute a substantial compliance or performance under and in accordance with the rules of the contest. The defendant also pleaded, as a bar to plaintiff's cause of action, that the announced rules of the contest made the decision of the contest judges final, and that, since the decision of the judges denied her a prize, she could not recover. Among other things, the rules provide that the judges of the contest are three prominent men, having no connection with "People's Popular Monthly," and that their decision will be accepted as final.

Upon trial to the court, without a jury, the court found that the three judges of the contest did not, in fact, perform the duty devolved upon them as judges, but improperly delegated that duty to an employee or employees of the defendant, and had only approved the judgment of said employees, and for that reason, the so-called decision of the judges was not final. The court also found that the appellant did not comply with the terms and conditions of the offer made by the defendant, that there was no substantial performance by her, under and in accordance with the rules of the contest; and dismissed plaintiff's petition, and rendered judgment against her for costs. From this action by the trial court, the plaintiff has appealed.

It must be borne in mind that this is an action at law, and was tried to the court, without a jury. It is the repeated pronouncement of this court that, in actions at law, tried to the court, without a jury, the decision of the court on questions of fact have the same weight, force, and effect as would the verdict of a jury. See *Pomeroy v. Farmers Sav. Bank of Shelby*, 207 Iowa 1310; *In re Estate of Sarvey*, 206 Iowa 527; *Forgan v. Allen Bros.*, 207 Iowa 1198; *Norton v. Catholic Order of Foresters*, 138 Iowa 464; *Collins v. Collins*, 139 Iowa 703; *Farrow v. Farrow*, 162 Iowa 87.

The burden is upon the plaintiff to establish, by a preponderance of the evidence, that she accepted defendant's offer, by a

substantial performance, under and in accordance with the terms and conditions of the offer,—the rules of the contest.

We will refer to some of the more salient facts of the case. During the month of February, 1925, the appellee inaugurated, through its own paper, "People's Popular Monthly," and other magazines and papers, what is generally known as a "Word-building Contest." The preliminary publication consisted of a representation of seven police dogs, promiscuously arranged, and immediately below, in bold type, were the words:

"Solve This Puzzle. Learn How to Win $1,000."

The publication then continues:

"Here are seven police dogs. By drawing three straight lines you can put each dog in a yard by himself. When you do this, send your answer right away, and I will immediately send you free full information of my grand distribution offer of more that $2,000 in cash. I will also send you a certificate for 900 points towards the $800 cash prize and tell you how to secure 100 more points which will win first prize of $800. I also offer $200 for promptness or $1,000 in all. 15 big cash prizes totaling more than $2,000 will be decided April 25th and will be paid promptly. In addition to all the big prizes positively everyone can get at least $1.00. If there is a tie for any prize the full amount will be paid to each person tying."

The foregoing announcement was signed by one of the authorized representatives of the defendant. The subscribers of defendant's paper are in excess of 800,000. The appellant, with more than 30,000 other persons, successfully solved the "police dog puzzle." Each of the contestants received a circular letter, stating therein:

"By solving the Police Dog puzzle you have already earned nine-tenths of the points needed to win the $800.00 cash prize. You can also win $200 additional for promptness, making $1000.00 in all. * * *

"Here is your certificate for the 900 points. * * *

"You can secure 85 more points in an hour or two and make $1.00 besides. * * * Here is a copy of People's Popular Monthly. * * * Show it to your friends and get $4.00 worth of subscriptions. KEEP $1.00 for YOURSELF and send us the other

$3.00 with your complete list of subscribers. We will immediately mail you a certificate for 85 more points. * * *

"HOW TO GET THE LAST 15 POINTS AND WIN $200.00 EXTRA.

"It costs you nothing but a little entertaining work, in which the whole family can help, to win the last 15 points. These are given for making the largest list of words out of the letters in the word DETERMINATION. Complete rules are given on separate sheet. Remember! With $200.00 offered for promptness it is important to send your subscriptions now. * * * So be sure your subscriptions are mailed by the date stamped on the order blank. You have until April 25th to send your list of words."

There was mailed with said letter, under separate cover, a copy of the rules for the contest.

Before February 14th, the plaintiff had secured the requested number of subscriptions for the publication, and sent the $3.00 to the appellee. By so doing, she became eligible to receive a prize offered by the defendant, provided that she thereafter sent to the defendant a sufficient number of correct words constructed out of the letters occurring in the word "determination," and provided that her list of words was in compliance with the rules of the contest, and received by the defendant before April 25, 1925. Upon receipt of the $3.00, the appellant was credited with 85 additional points.

The appellant, along with the more than 30,000 other contestants, was provided with a sheet containing the rules, and at the top of the sheet, in bold type, were these words:

"USE THIS SHEET FOR YOUR WORDS."

Immediately below this appears the following:

"Write your words as nearly as possible in alphabetical order in the columns provided. Should other sheets be necessary number all words carefully and arrange them in vertical columns. Use only one side of the paper."

Below the foregoing is language almost identical with Rule 5, hereinafter quoted. Upon the sheet containing the rules is the following warning:

"*In making these words all of the rules must be closely followed.*"

There are ten rules for making the word list, only a portion

of which we deem material, in so far as this controversy is concerned, and they are as follows:

"2. Make as many words as possible from the letters contained in the word DETERMINATION.

"3. You may use a letter in a word as many times at it appears in DETERMINATION. For instance you may use 'E' twice, 'D' once, etc., in a word.

"4. Lists of words must be written plainly on only one side of the paper, in vertical columns, in alphabetical order and numbered consecutively.

"5. *Do not use obsolete, dialectic or foreign words, abbreviations, contractions, reformed spelling, prefixes, suffixes, proper nouns or proper adjectives.* Words of the same meaning but spelled differently will be counted as separate words. Words of the same spelling but different meaning will be counted as one word.

"6. Webster's New International Dictionary will be used as authority.

"10. Lists of words must be mailed and postmarked on or before midnight of April 25, 1925."

A Mrs. Renslow and a Mr. Graham were awarded by the judges the first two prizes. It was stipulated that no other lists than those of the appellant, Mrs. Renslow, and Mr. Graham should be considered in determining the issues. Within the prescribed period, the plaintiff sent the defendant her list, consisting of 4,137 words. It is conceded that 2,481 of said words are incorrect, and 122 are duplications, and that the 2,481 incorrect words belong to the prohibited classes of words named in Rule 5 hereinbefore quoted. It was further stipulated that, for the purpose of trial, appellant's list contained 1,457 correct words. Mrs. Renslow submitted a list of 1,437 words, 14 of which were incorrect, and 2 duplications, leaving 1,421 words in her list conceded to be correct. Graham submitted a list of 1,450 words, 22 being incorrect, leaving 1,428 correct words in his list. It will thus be observed that in appellant's list she had 36 more correct words than Mrs. Renslow, and 29 more than Graham. Therefore, if she has complied with the terms and conditions of appellee's offer, or if what she did in submitting her 4,137 words can be

conclusively said to be substantial performance, in accordance with the rules, she is entitled to the $1,000.

When the appellant mailed her list of words, she attached thereto a letter, in which she states:

"There are words in this list which I know are not good under the rules, but judges do not always follow the rules strictly, and to protect myself against such a possibility I included everything I could find. There are good words in this list which do not appear in their vocabulary places, but they are good words just the same."

Appellant testifies, as a witness, that she had studied and examined the rules, was familiar with them, including Rule 5 hereinbefore quoted, and that she did not follow that rule.

Appellant's action is founded upon contract. Did the action of the appellant in submitting her list containing a vast volume of words known by her to be incorrect under the rules amount to an acceptance of appellee's offer? Was it substantial performance, under and in accordance with the rules? In 23 Ruling Case Law 1115, it is aptly stated:

"A binding and enforcible contract to pay a reward rests on one side on a valid offer, and on the other side on an acceptance of such offer, *including its terms and conditions,* by a performance of the services requested in the offer * * *. The matter rests exclusively in the domain of contract, involving an offer and its acceptance. One desiring to offer a reward may fix *his own terms and conditions.* If they are satisfactory, they must, like other propositions, be accepted as made. If unsatisfactory, no one need accept them." (The italics are ours.)

In the same volume, at page 1118, it is declared:

"While a mere offer, not assented to, does not constitute a contract, an acceptance of the terms of an offer of a reward by any person who complies therewith by performing the service creates a complete and valid contract * * *."

In 34 Cyc. 1731, we find the following apt language:

"An offer of or promise to pay a reward is a proposal merely, or a conditional promise, on the part of the offerer, and not a

consummated contract. It may be said to be, in effect, the offer of a promise for an act, and the offer becomes a binding contract when the act is done or the service rendered in accordance with the terms of the offer * * *.''

It is the doing of the act in accordance with the terms and conditions of the offer which completes the contract. 34 Cyc. 1738. In other words, to make a binding and enforcible contract, the act must be done in accordance with the terms and conditions of the offer. 34 Cyc. 1742. See, also, 13 Corpus Juris 275, 279, 281-283, 289; *Baker v. Johnson County,* 37 Iowa 186; *Breen v. Mayne,* 141 Iowa 399. Was there a performance by the appellant, in accordance with the terms and conditions of the offer? In 34 Cyc. 1743, it is aptly stated:

''Substantial compliance with the terms of the offer is in general sufficient. However, substantial compliance at least with the conditions of the offer must be shown, in order to authorize recovery.''

Substantial performance permits only such omissions or deviations as are inadvertent or unintentional. 9 Cyc. 603; 13 Corpus Juris 692; *Littell v. Webster County,* 152 Iowa 206.

It was appellee who made the offer and fixed the rules. To constitute an acceptance by the appellant, it was necessary for her to substantially comply with the terms and conditions fixed in appellee's offer. Unless she did so, then there was no meeting of the minds, and no contract. Intentional violation of the rules, the terms of the offer, is not substantial performance. Other contestants who substantially complied with the rules should not lose to one who intentionally and deliberately violated them. Appellant was under no obligation to send appellee a list of words. She could do so or not, at her own election; but, to be entitled to a prize, it was incumbent upon her to substantially comply with the terms and conditions of appellee's offer. She could not, in making her list, make a rule to suit herself. As having some bearing upon the case, see *Smead v. Stearns,* 173 Iowa 174.

Under the record, the trial court could well find that she has failed to establish an acceptance of appellee's offer by a substantial performance in accordance with the terms and condi-

tions of the offer. Indeed, no other finding could be sustained.

The appellant, in her argument, also makes some claim based upon waiver. The trial court correctly found that there was no waiver. Moreover, there is no plea of waiver, and therefore it is not an issue in the case.

Other propositions argued are not material in the determination of the rights of the parties hereto.

For the foregoing reasons, the judgment of the trial court is hereby affirmed.—*Affirmed.*

ALBERT, C. J., and STEVENS, MORLING, and GRIMM, JJ., concur.