BOWLERAMA OF TEXAS, INC., Appellant,

v.

John MIYAKAWA et al., Appellees.

No. 14800.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 3, 1969.

Rehearing Denied Jan. 7, 1970.

Charles H. Teal, San Antonio, for appellant.

Rudy Esquivel, San Antonio, for appellees.

CADENA, Justice.

Plaintiffs, John Miyakawa and Jo Ann Goldman, filed this suit to recover $500.00 which they alleged they won as a Jackpot prize in a bowling tournament sponsored by defendant, Bowlerama of Texas, Inc. Defendant appeals from a judgment rendered in favor of plaintiffs by County Court at Law No. 3 of Bexar County, following a non-jury trial.

The tournament in question involved, in fact, two separate competitions. First, there was a doubles tournament, with defendant awarding ten prizes weekly, guaranteed to total at least $300.00, with first prize in the weekly doubles competition being $100.00. In addition, there was a "Jackpot" competition in which any team of a man and woman bowler who scored in excess of 1,440 in three games would be awarded $500.00. Only one Jackpot prize of $500.00 could be won in any one week, and, of course, there was no guarantee that any team would win the Jackpot during any given week.

The announcement of the competition advised prospective entrants that "house rules" would be applicable to both the doubles tournament and the Jackpot competition.

Some of the "house rules" were applicable to all contests, but five of the rules were, by their language, applicable only to the Jackpot competition. Insofar as this controversy is concerned, we need only note that while teams which kept their own scores were eligible to win one of the ten weekly prizes, only those contestants whose scores were kept by a scorer selected by the clerk in charge of the control desk and approved by defendant's manager were eligible for the Jackpot award. The more stringent scoring rules applicable to the Jackpot competition were due to the fact that the guaranteed ten weekly prizes in the doubles tournament were paid from a prize fund made up of a portion of the entry fee paid by the contestants, while the $500.00 Jackpot prize was to be paid entirely from defendant's funds.

It is undisputed that plaintiffs' score was not kept by a scorekeeper selected by the clerk in charge of the control desk and approved by defendant's manager. When plaintiffs paid their entry fee they did not request the appointment of an official approved scorekeeper, and, although the Jackpot competition rules specifically stated that the official scorekeeper must keep the score beginning with the first ball rolled in the first frame of the first game of the three-game series, plaintiffs kept their own score for the first two frames, after which a third party, at plaintiffs' request, kept score for the remaining twenty-eight frames of the three games.

The rules applicable to the Jackpot competition expressly stated that no bowlers would be allowed to keep their own scores.

The "house rules" had been reduced to writing and had been posted on the bulletin board at defendant's bowling establishment for almost five months prior to the time that plaintiffs alleged they won the Jackpot. One of the plaintiffs confessed familiarity with all of the house rules except that which required that Jackpot scores be kept by an official scorer.

 Under these circumstances plaintiffs cannot recover. The rights of a contestant who has performed the act required in the promoter's offer are limited by the terms of the offer, that is, by the conditions and rules of the contest as made public. Endres v. Buffalo Auto Dealers Ass'n, 29 Misc.2d 756, 217 N.Y.S.2d 460 (1961); Scott v. People's Monthly Co., 209 Iowa 503, 228 N.W. 263, 67 A.L.R. 413 (1929); Anno.: 87 A.L.R.2d 651, 671 (1963). In order to recover, it was incumbent on plaintiffs to show either that they had complied with the terms of the offer or that the promoter accepted their performance as sufficient compliance. 13 Tex.Jur.2d, Contracts, Sec. 22, p. 140. This plaintiffs failed to do.

Plaintiffs contend that defendant paid prizes to contestants whose scores had not been kept by an official scorer. This is true as far as the doubles competition, as distinguished from the Jackpot contest, is concerned, but, as already pointed out, the rules relating to the presence of an official scorekeeper were applicable only to the Jackpot contest. There is no evidence that defendant, since adoption of the rule governing score keeping in the Jackpot contest, had ever awarded a prize to contestants whose score was not kept by an official scorekeeper.

The judgment of the trial court is reversed and judgment is here rendered that plaintiffs take nothing.