OPINION OF THE COURT
Simons, J.
Plaintiff claims she holds the $166,950 winning Lotto ticket for the week of September 6, 1980. She promptly presented it for payment but payment was refused because there was no record of the purchase at Lotto Central. She brought this action against the sales agent who sold her the ticket, J’S Coiffures, Inc., doing business as Donut Shoppe, and the independent contractor operating the Lotto game for the New York State Division of the Lottery, defendant Games Management Services. She seeks to recover the prize money and $1,000,000 punitive damages upon causes of action sounding in negligence, “intentional deprivation”, contract, and bailment. Contending that many Lotto tickets have been misplaced or lost and that defendant contractor was guilty of negligence or gross *526 negligence in losing the original or a record of her ticket, she sought extensive discovery and a trial to prove defendants’ fault. After discovery was partially completed, defendant contractor moved for summary judgment. Special Term denied the motion and ordered further discovery. The Appellate Division reversed and dismissed the complaint (89 AD2d 69). It held that, notwithstanding the outstanding discovery order and the evidence plaintiff might develop from it, defendant contractor was not liable on plaintiff’s claim, either in tort or contract. Defendant J’S Coiffures, Inc., has not moved for summary judgment; rather, it opposed the contractor’s motion when made.
Plaintiff did not sue the State. She concedes she has no claim against it under the rules and regulations adopted by the Division of Lottery, but she contends that the contractor and the sales agent are not similarly insulated from liability for their own fault. We hold that they are, however. Under the division’s rules and the terms of the contract of purchase printed on the ticket, plaintiff’s ticket never became a “winning ticket” because it was never accepted (i.e., microfilmed) by defendant contractor (21 NYCRR 2817.13). That the failure to deliver the ticket or microfilm it, as the rules required, may have resulted from defendant contractor’s fault is irrelevant. The State and the contractor are both exempt from liability for fault in delivering the ticket for microfilming and plaintiff’s only recourse is recovery of her wager (21 NYCRR 2817.11).
Gambling contracts are unenforceable in New York State (General Obligations Law, § 5-401) and the lottery is authorized only because of specific constitutional and statutory provisions (see NY Const, art I, § 9; Tax Law, § 1600 et seq.). Pursuant to these provisions, the Legislature has directed the State to conduct a lottery to raise funds for educational purposes (Tax Law, § 1601). Under the statutory scheme the Commissioner of Taxation and Finance is authorized to appoint a Director of the Division of the Lottery to administer the lottery and he, in turn, is delegated the authority to determine the type of lottery to be conducted, the number and size of the winning prizes and to promulgate rules and regulations governing its operation. The director is also charged with licensing sales *527 agents and with developing an internal security plan for the lottery (Tax Law, § 1604). Lotto is one of the games established by the division.
Obviously, the success of any gambling operation, particularly one as broad based and as susceptible to counterfeiting and fraud as a lottery, depends upon the security of its operation and the reliability and speed with which prizes are paid. It was essential, therefore, that the State devise procedures that eliminated the possibility of fraud and protracted litigation over the validity of suspect tickets after each weekly drawing by disappointed players. Accordingly, after the statute was enacted the director solicited proposals from those interested in operating Lotto for the State. It accepted the proposal of defendant Games Management Services, a joint venture, whose partners include several affiliates of Vernon’s Organizations Ltd., an operator of over 150 sports pools and lotteries with worldwide experience. The contractor’s experience convinced it that the only reliable way to conduct an off-line game (i.e., one in which computer terminals are not used) was to require the microfilming of the original of each ticket sold. Accordingly, the division enacted rules and regulations detailing the procedures to be followed for each ticket sale and providing that unless such procedures are followed the tickets may not be recognized as winners (see, generally, 21 NYCRR 2817.1 et seq.).
To play Lotto a player buys a ticket printed in triplicate, marks it with the numbers he or she desires to play, in this case six numbers for a $1 wager, and then has the sales agent validate the ticket by machine. After validation, the sales agent returns one copy to the player and keeps the original and one copy. The agent delivers the original with all other original tickets sold that week to the contractor to be taken to Lotto Central, defendant’s headquarters in White Plains. There, the contractor microfilms and dates each ticket to establish proof that the ticket was actually sold, marked and validated before the weekly drawing.
Under the rules of the division and under the terms of sale printed on the ticket, no ticket can be a winner unless it has been microfilmed at Lotto Central before the drawing (see, generally, 21 NYCRR 2817.9 [n]; 2817.13 [a] [4], *528 [c]; 2817.18). Specifically, rule 2817.13 (a) provides: “To be a valid ticket * * * all the following requirements must be met: * * * (4) The top part of the ticket submitted through a Lotto sales agent must be received by Lotto Central and be microfilmed before the drawing for a particular weekly game.” Similarly, among the terms of sale imprinted on each ticket, original and copies, in bold-face type and red ink, is the statement that: “lotto tickets not valid until microfilmed at lotto central, in accordance with LOTTO rules.” The player is bound by both the regulations and the terms of sale printed on the ticket.
Plaintiff has submitted affidavits, including those from an employee of the sales agent, to prove that she purchased and marked her ticket and that it was validated by the sales agent. She hypothesizes that that ticket was not received and microfilmed at Lotto Central because the contractor’s courier must have lost it. Whether he did so or not is irrelevant for the rules provide that neither the State Lottery nor the contractor is liable for lost or stolen lottery tickets (21 NYCRR 2817.10 [b]). Moreover, the fact that defendant sales agent admits it received a fee for the ticket or that it validated the ticket is not sufficient, for neither is acceptable proof that the ticket was received by Lotto Central (21 NYCRR 2817.13 [c], [d]). Finally, the rules provide that the risk of loss rests on the player, not the State or the contractor (21 NYCRR 2817.15),* and that in the event of a dispute between the State and/or the contractor and a player claiming a winning ticket, the sole and exclusive remedy of the player shall be a determination by the director and the State Lottery that the player is entitled to a refund of the fee paid (21 NYCRR 2817.11). Similarly, the terms of sale printed on the ticket provide: “Players acknowledge that lotto Sales Agents are acting on behalf of the players in validating the lotto tickets and returning them to the Contractor [defendant Games Management Services] acting for and on behalf of the State Lottery. The liability of the Contractor, the State, and the *529 lotto Sales Agents is limited to a refund of the amount wagered if a ticket is not accepted by the Contractor on behalf of the State, regardless of whether said liability arises through neglect, omission, failure or otherwise on the part of an Agent or the Contractor” (emphasis added).
These rules were formulated and enacted after defendant contractor had been consulted and with its aid and advice. They expressly and necessarily exempt both the State and the contractor from liability on disputed ticket claims, for danger to the stability and success of the game is just as great if either of them becomes bogged down in ticket disputes with disappointed players.
The limited power of the court in cases such as this is familiar law and it remains only for us to pass upon the reasonableness of these rules. The Legislature may establish administrative agencies to accomplish its purposes and such agencies may be given the power to adopt rules and regulations to advance the purposes for which they were created. The regulations so adopted, if reasonable, have the force and effect of law (Matter of Bernstein v Toia, 43 NY2d 437, 448; Ostrer v Schenck, 41 NY2d 782, 786). The court may not disturb them unless they are “so lacking in reason for [their] promulgation that [they are] essentially arbitrary” (Matter of Marburg v Cole, 286 NY 202, 212). Because authorized gambling contracts are an exception to the general laws, administrative rules regulating such activities are to be strictly construed (see Matter of Caplan v New York State Dept. of Taxation & Fin., Div. of Lottery, 32 NY2d 134; Mc Bride v New York City Off-Track Betting Corp., 66 AD2d 770).
Manifestly, these rules were reasonably enacted to prevent fraud, dissipation of funds by excessive and protracted litigation, and to insure prompt payment of prizes. Plaintiff concedes as much. Her contention that defendant contractor is not protected by them is belied by the express language of the various rules which mandate the strict procedures to be followed before the player may be adjudged to possess a winning ticket. Whether the State or an independent contractor is the operator of the game, the player must first prove her entitlement to the prize by *530 proving the ticket was accepted, i.e., microfilmed by the contractor.
Finally, we would note that the terms on the tickets exempting the State and the contractor from liability are clear and unequivocal and consistent with the rules and regulations of the game. They should be enforced (see Ciofalo v Vic Tanney Gyms, 10 NY2d 294; and cf. Gross v Sweet, 49 NY2d 102). Insofar as plaintiff has attempted to charge defendant with gross negligence, her opposing papers fail to raise a question of fact on that issue.
Accordingly, the order of the Appellate Division should be affirmed.

 21 NYCRR 2817.15 (d) provides: “Neither the contractor nor the State Lottery shall be liable to any player for any neglect, omission or failure on the part of any Lotto sales agent to forward a ticket to Lotto Central in accordance with this Part or to properly validate the same. The only acceptable proof of entry for a ticket is that the ticket’s image appears on microfilm for the particular weekly game.”