630 So.2d 1177 (1994)
Betty HAYNES and Linda Courson, Appellants,
v.
DEPARTMENT OF the LOTTERY, a Department of the State Government of the State of Florida; Control Data Corporation, a foreign corporation; and Johnson & Johnson, Inc., a Florida corporation d/b/a Johnson & Johnson # 9, Appellees.
No. 92-3353.
District Court of Appeal of Florida, First District.
January 12, 1994.
Rehearing Denied February 22, 1994.
*1178 S. Perry Penland, Jr., and Paul S. Boone, Penland & Penland, Jacksonville, for appellants.
E.C. Deeno Kitchen and Robert King High, Jr., Kitchen, Judkins, Simpson and High, Tallahassee, for appellee Johnson & Johnson.
Marilyn K. Morris and C. Timothy Gray, Collins & Truett, P.A., Tallahassee, for appellee Dept. of Lottery.
Jeannette M. Andrews, Fuller, Johnson & Farrell, P.A., Tallahassee, for appellee Data Corp.
MICKLE, Judge.
Appellants, Betty Haynes and Linda Courson, appeal a final judgment rendered in favor of appellees, on appellants' claims for breach of contract, negligent breach of contract and negligence arising out of appellants' purchase of lottery tickets. We affirm.
Appellants alleged in their complaint that on December 10, 1988, as part of a joint venture between them, Haynes went to Johnson & Johnson # 9 convenience store to purchase 50 Lotto tickets for the $28,000,000.00 drawing to take place later that night. After standing in line for over an hour, Haynes submitted ten play slips, each containing five selections of six numbers each. While the clerk processed Haynes' tickets, the on-line terminal went off-line for several minutes, refusing to accept any play slips. Haynes was subsequently issued 50 Lotto tickets. On one of the play slips, Haynes had selected the following six numbers: X-XX-XX-XX-XX-XX. When Haynes returned home and learned that these six numbers had been selected, she inspected her tickets only to discover none contained the aforementioned six numbers. Instead, two previous play slips had been duplicated resulting in the duplication of several tickets. Appellants contend this error occurred either through the actions of the store clerk or as a result of computer malfunction. Appellants' claim for payment made to the Department of the Lottery was denied.
*1179 Appellants sued the Department of the Lottery (Lottery), Johnson & Johnson, Inc. (doing business as Johnson & Johnson # 9), and Control Data Corporation (the firm selected by the Lottery to install, operate, and maintain the computer equipment), seeking damages on three theories: (1) breach of contract; (2) negligent breach of contract; and (3) negligence.[1] The lower court granted the Lottery's motion for summary judgment and dismissed the second amended complaint against Johnson & Johnson and Control Data Corporation, essentially on the ground that, since appellants had not presented the winning ticket, they failed to state a claim upon which relief could be granted. We affirm for the reasons set forth below.
We begin first with the breach of contract claim against the Lottery. We note at the outset, adopting the conclusion reached by numerous courts of foreign jurisdictions, that a lottery winner's entitlement to a prize is governed by the principles of contract law. See e.g., Parsons v. South Dakota Lottery Commission, 504 N.W.2d 593 (S.D. 1993); Thao v. Control Data Corporation, 57 Wash. App. 802, 790 P.2d 1239 (1990); Driscoll v. Department of Treasury, 265 N.J. Super. 503, 627 A.2d 1167 (1993). In the instant case, the Lottery made an offer that the purchaser of a Lotto ticket would have a chance to win prize monies according to the rules and procedures of the lottery. Herein, in buying their tickets, appellants accepted that offer and agreed to the announced rules for determining prize winners. Section 24.115 of the Florida Public Education Lottery Act, Florida Statutes (1987), is entitled "Payment of prizes" and provides in pertinent part:
(c) No prize may be paid arising from claimed tickets that are stolen, counterfeit, altered, fraudulent, unissued, produced or issued in error, unreadable, not received or not recorded by the department by applicable deadlines, ... .
Further, on the back of Lotto play slips the following language is printed:
In purchasing a LOTTO ticket, the player agrees to abide by all rules and procedures of the Florida Lottery. The play slip is not a valid receipt.
Thereby, the existence of the law, although not its provisions, is specifically called to the ticket holder's attention and made a part of the contract. Appellants herein were adequately placed on notice of their duty to ensure that the tickets issued them accurately reflected the number combinations selected. By restricting payment of prize money to holders of winning tickets, the clear legislative purpose is to keep the administrative machinery geared for the payment of winnings as simple and efficient as possible. A reading of the Florida Public Education Lottery Act reveals no intent on the part of the legislature to create liability on the part of the Lottery in the event that terminals malfunction or are improperly maintained. Further, nothing in the Lottery act lends color to the proposition that the Lottery must bear the consequences for the actions of retail clerks. This result finds support in a Florida case dealing with the subject of pari-mutual betting wherein the court denied recovery for the alleged failure to deliver a winning ticket due to a machine malfunction, Valois v. Gulf-stream Park Racing Ass., Inc., 412 So.2d 959 (Fla. 4th DCA 1982), and in foreign jurisdictions where recovery is uniformly denied to winning players who lose their tickets. See Karafa v. New Jersey State Lottery Commission, 129 N.J. Super. 499, 324 A.2d 97 (1974).
Appellants' contention that they were not adequately placed on notice that they should have checked their tickets with the corresponding numbers on the play slip is not well taken. Similarly unsound is appellants' argument that the Lottery prevented them from performing their part of the contract. Nothing or no one prevented or hindered appellants from double-checking the numbers on the tickets with the corresponding play slips. Lastly, we reject appellants' argument that the Lottery's statutes and rules are inapplicable in view of the fact that appellants are not claiming their rightful prize winnings but rather sue for money damages.
*1180 We turn next to the breach of contract claim against Johnson & Johnson. Appellants contend that, even if they have no claim against the Lottery under the statute, rules and regulations, vendors are not similarly insulated from liability for their own fault. We disagree. Like the Lottery, Johnson & Johnson is also exempt from liability for fault in failing to deliver a requested ticket. Appellants' contention that Johnson & Johnson is not protected by the applicable statute and rules is belied by the aforementioned express language mandating that a winning ticket must be presented before a player may be adjudged a winner. Further, and perhaps most importantly, appellants failed to identify a recognizable contract between themselves and Johnson & Johnson.
Turning now to the allegations against Control Data Corporation, appellants claimed below that Control Data Corporation and the Lottery entered into a contract to sell lottery tickets to the public, that the contract was intended to benefit appellants as members of the public, and therefore that appellants have a claim against Control Data Corporation as third-party beneficiaries. Appellants stretch the credulity of the court with their claim that any agreement between the Lottery and the mechanism for selling tickets which effectuates its intent renders each member of the ticket buying public a third-party beneficiary. Clearly, the purpose of the contract between Control Data Corporation and the Lottery is to give effect to the mandate underlying the lottery itself, which is to benefit the State's public education system. Section 24.102, Florida Statutes (1987), entitled "Purpose and intent" provides:
(1) The purpose of this act is to implement s. 15, Art. X of the State Constitution in a manner that enables the people of the state to benefit from significant additional moneys for education and also enables the people of the state to play the best lottery games available.
Appellants cannot enforce the contract between Control Data Corporation and the Lottery because they, at best, derive only a remote and incidental benefit from it.
As a final note, as pointed out by numerous courts of foreign jurisdictions, any enforceable right arising out of the alleged failure to issue appellants a correct ticket must fail for policy reasons. The concerns of fraud and protracted litigation militate against imposing liability on either the Lottery or its vendors, retailers and contractors under the instant scenario. Without the implication that appellants herein participated in such a fraudulent scheme, what is to prevent someone from completing a play slip moments after learning of the winning numbers and thereafter claiming that through the fault of a third party no corresponding ticket was issued? While appellants' plight is certainly lamentable, to recognize a viable cause of action in this case would open the door to innumerable and unenforceable deceptive practices.
AFFIRMED.
SMITH and ALLEN, JJ., concur.
NOTES
[1] At oral argument, counsel for appellants announced appellants' intent to withdraw the negligence claims. We therefore address solely the remaining contract theories.