Harold **KINNARD** and Rebecca
Kinnard, Appellants,

v.

**CIRCLE K STORES INC., Appellee.**

No. 04–96–00798–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 28, 1998.

Rehearing Overruled March 4, 1998.

Thomas B. Black, San Antonio, Paul D. Rich, Rich & Alonzo, P.C., Dallas, William A. Brant, Nunley & Jolley, L.L.P., Boerne, for Appellants.

Steven M. Zager, Joe Michels, Gregory S. Coleman, Robert W. Higgason, Weil, Gotshal & Manges, L.L.P., Houston, Joseph C. Elliott, Plunkett & Gibson, Inc., San Antonio, Dewey E. Helmcamp, III, Assistant Attorney General Administrative Law Division, Austin, for Appellee.

Before RICKHOFF, LÓPEZ and ANGELINI, JJ.

## OPINION

RICKHOFF, Justice.

In this case of first impression in Texas, Harold and Rebecca Kinnard appeal from a summary judgment granted in favor of Circle K Stores, Inc. ("Circle K") on their claim that Circle K breached its duty to them to sell lottery tickets in conformity with their instructions. We affirm.

## FACTS

Rebecca Kinnard bought tickets for the January 2, 1993 Lotto Texas drawing[1] at a San Antonio Circle K store. Ms. Kinnard stated in her deposition that she did not double-check her tickets at the time because there was a long line of customers behind her. The Kinnards contend one of the playslips Ms. Kinnard handed to the clerk that night contained the winning combination of six numbers; they also contend that the clerk who processed her playslips was not a store employee. In any case, this combination did not register with the Lottery Commission computer and the Kinnards were not winners; what did register with the Commission was a duplicate number, processed at that store, roughly at the time the Kinnards would have played. It thus appears that one of the playslips was processed twice.

Alleging that the error occurred because Circle K negligently failed to staff its stores with sufficient personnel authorized to handle lottery slips, the Kinnards filed suit against Circle K for negligence, negligence per se and violation of the Texas Deceptive Trade Practices Act.

After discovery, Circle K moved for summary judgment, contending: 1) the Kinnards did not inspect their ticket for errors, as required by lottery rules, and this failure to mitigate barred recovery; 2) the playslip did not constitute evidence of the Kinnards' claim as a matter of law; 3) public policy precluded the Kinnards' claims, and every other jurisdiction that has been faced with a similar claim has ruled against it. The trial court granted summary judgment without specifying a ground.

In four points of error the Kinnards argue the trial court erred in its construction of the statutes and regulations surrounding the Texas Lottery; that there were fact issues

---

1. Lotto Texas is an on-line game run by the Texas Lottery Commission. *See* 16 TEX. ADMIN. CODE § 401.305 (West 1997). Each chance to play costs $1. *Id.* at § 401.305(c). The player picks six numbers from one to fifty, marking these numbers on a playslip in a process similar to "bubbling in" answers on a standardized test; the player can also opt for a random selection of numbers generated by the computer. *Id.* at § 401.305(d)(2). This playslip is fed into a com- puter, which transmits the number combination to lottery headquarters in Austin. *Id.* On Wednesday and Saturday nights, at 9:59 p.m., lottery officials select six numbers at random from one to fifty. *Id.* at § 401.305(g). The player who successfully picks all six numbers wins the stated jackpot, or shares in the jackpot if there is more than one winner. *Id.* at § 405.305(e)(1). The stated odds against picking the correct numbers are 15,890,700:1. *Id.* at § 401.305(e)(1).

on the question of causation, and on violations of the Texas Deceptive Trade Practices Act; and that the judgment represents a violation of TEX. CONST. Art. I, § 13, also known as the open courts provision.

## STANDARD OF REVIEW

■ The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–549 (Tex.1985). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the nonmovant; every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubts will be resolved in his favor. *Nixon*, 690 S.W.2d at 549. If the order is general, without specifying the grounds on which the trial court granted summary judgment, the nonmoving party on appeal must negate any grounds on which the trial court could have granted summary judgment. *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970); *Sipes v. Petry & Stewart*, 812 S.W.2d 428, 430 (Tex.App.—San Antonio 1991, no writ). On the other hand, a summary judgment for a defendant, disposing of an entire case, is proper only if, as a matter of law, the plaintiff could not succeed upon any theories pleaded. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983) (per curiam).

■ A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action is entitled to summary judgment. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993). A defendant may also show entitlement to summary judgment by conclusively proving all elements of an affirmative defense. *Montgomery v. Kennedy*, 669 S.W.2d 309,

310–11 (Tex.1984); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972).

## NEGLIGENCE CAUSES OF ACTION

■ Circle K argues that the lottery is a contractual arrangement. This is the case in Texas when a public offer is made whose acceptance is conditioned on performance, as in a reward situation or contest. *Kasling v. Morris*, 71 Tex. 584, 9 S.W. 739, 740 (1888); *Hall v. Bean*, 582 S.W.2d 263, 264–265 (Tex. Civ.App.—Beaumont 1979, no writ). This is also the generally accepted view of the lottery's relationship with its players. *See Clark v. City of Washington*, 25 U.S. (12 Wheat.) 40, 60, 6 L.Ed. 544 (1827) (dicta); John E. Theuman, Annotation, *State Lotteries: Actions by Ticketholders against State or Contractors for State*, 40 A.L.R.4th 662, 663 (1985) and cases cited therein.

■ At common law, when a contract is formed by acceptance of a promoter's offer, the rights of a contestant who has performed the act(s) required in the promoter's offer are limited by the terms of the offer, that is, by the conditions and rules of the contest as made public. *Bowlerama of Texas Inc. v. Miyakawa*, 449 S.W.2d 357, 359 (Tex.Civ. App.—San Antonio 1969, writ dism'd). In our case, this principle is made explicit by statute. TEX. GOV'T CODE ANN. § 466.252 (Vernon Supp.1998) (by purchase of lottery ticket, player agrees to abide by and be bound by the commission's rules).

■ The rules adopted by the Texas Lottery Commission for the Lotto Texas game placed on the Kinnards the "exclusive responsibility" to verify the accuracy of the player's selections. 16 TEX. ADMIN. CODE § 401.305(f)(3) (West 1997). This caveat is also printed on the back of every playslip.[2]

■ It is obvious to us that, by using the language "exclusive responsibility," the Texas Lottery Commission intended to place all

---

**2.** At the time of this occurrence, the playslip included these notations:

• You will receive a ticket from the on-line terminal that lists your chosen game, draw date(s) and numbers. *It is your responsibility to check your ticket immediately to make sure it represents the correct game, draw date(s), and numbers.*

. . .

• *The ticket, not the playslip, is the only valid proof of your number selection and is the only valid receipt to claim a prize.* The Texas Lottery is not responsible for lost or stolen tickets.

(emphasis in original)

liability for tickets that do not meet the player's specifications on the player alone. We think this is the case for several reasons.

 First is the plain meaning of the term "exclusive responsibility." The most pertinent definition of "exclusive" is "vested in one person alone." BLACK'S LAW DICTIONARY 506 (5th ed.1979). The most pertinent definition of "responsibility" is "The obligation to answer for an act done, and to repair or otherwise make restitution for any injury it may have caused." *Id.* at 1179. Therefore the terms of the offer accepted by the Kinnards in purchasing their lottery tickets bars this claim against Circle K.

Secondly, the mechanics of the lottery point to this conclusion. The purpose of the Texas Lottery is to be an efficient source of state revenue, untainted by criminal influence,[3] and placing responsibility on the player to check his or her own numbers for errors furthers the efficiency of the system. The player is in a better position to recognize the numbers he or she selected than a harried clerk faced with a line of customers waiting to play Lotto Texas on the night of a drawing. And it is difficult to believe the Texas Lottery Commission would expect the retailer to insure against such a multimillion-dollar miscue when the retailer's profit margin on a ticket is five cents on the dollar.[4]

The most compelling reason for rejecting the Kinnards' claim is that allocating responsibility in this manner discourages temptation. To quote from a case from another jurisdiction, faced with the same question:

> [A]ny enforceable right arising out of the alleged failure to issue appellants a correct ticket must fail for policy reasons. The concerns of fraud and protracted litigation militate against imposing liability on either the Lottery or its vendors, retailers and contractors under the instant scenario. Without the implication that appellants herein participated in such a fraudulent scheme, what is to prevent someone from completing a playslip moments after learning of the winning numbers and thereafter claiming that through the fault of a third party no corresponding ticket was issued? While appellants' plight is certainly lamentable, to recognize a viable cause of action in this case would open the door to innumerable and unenforceable deceptive practices.

*Haynes v. Dep't of the Lottery,* 630 So.2d 1177, 1180 (Fla.App.1994).

We therefore find this allocation of responsibility consistent with the aims of the Legislature in creating an efficient lottery system free of the taint of fraud. This conclusion is also consistent with the decisions of courts in sister states faced with similar situations. *See, e.g., Molina v. Games Management Svcs.,* 58 N.Y.2d 523, 462 N.Y.S.2d 615, 449 N.E.2d 395, 396, 40 A.L.R.4th 655 (1983); *Haynes,* 630 So.2d at 1179; *Thao v. Control Data Corp.,* 57 Wash.App. 802, 790 P.2d 1239, 1241–42 (1990).

For all these reasons, we find the Kinnards' negligence claims were barred as a matter of law, and summary judgment was proper.

We overrule the Kinnards' first and second points of error.

### THE DTPA CAUSE OF ACTION

The Kinnards next argue that it was error to grant summary judgment on their claims under the Texas Deceptive Trade Practices Act, TEX. BUS. & COMM.CODE ANN. arts. 17.41–.63 (Vernon 1987 & Supp.1997), and that these claims deserve a jury hearing. Circle K contends that this transaction does not qualify as provision of a "service" for purposes of the DTPA. We agree with Circle K.

 To avail themselves of the DTPA, the Kinnards must first show they were "consumers." This means they must show that they "sought to acquire, by lease or purchase, any goods or services." TEX. BUS. & COM.CODE ANN. § 17.45(4) (Vernon 1987). We believe the Kinnards do not qualify as "consumers" for purposes of this transaction

---

**3.** State Lottery Act, 72nd Leg., 1st C.S., ch. 6, sec. 1, 1991 Tex. Gen. Laws 197, 198 (now codified at TEX. GOV'T CODE ANN. § 466 (Vernon Supp.1997)).

**4.** TEX. ADMIN. CODE § 401.304(h)(4) (West 1997).

because a lottery ticket is a right to participate in the drawing held twice a week. As such, it is an intangible, and therefore neither a good nor a service. *See Hand v. Dean Witter Reynolds Inc.,* 889 S.W.2d 483 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

In *Hand,* the plaintiff sued her broker and his company in negligence and under the DTPA because they did not execute desired options contracts in the oil spot market. The trial court granted summary judgment. *Id.* at 486–487. In addressing her DTPA claim, the court first determined that a transaction involving an intangible, such as a futures contract, does not involve a "good" or "service" within the meaning of the statute, although some service inevitably accompanies the transaction. *Id.* at 496–498. It then found that in transactions in which the sole object of the transaction is the purchase of an intangible, Texas law does not grant consumer status: "Thus, when a transaction's central objective is the acquisition of an intangible, Texas law requires that the collateral service be an important objective of the transaction and not merely incidental to the performance of a transaction excluded under the DTPA." *Id.* at 500. Investment advice would be an example of such a collateral service. *Id.* at 499–500.

In our case, we find that the object of the transaction was a chance to participate in the Texas Lotto drawing for that date; Circle K's participation in that process was merely incidental to the transaction. Therefore, the Kinnards do not qualify as "consumers" under the DTPA and summary judgment was proper. The Kinnards' third point of error is overruled.

## OPEN COURTS

In their fourth point of error, the Kinnards contend that the trial court's summary judgment violates Art. I, sec. 13 of the Texas Constitution. However, the Kinnards did not raise this claim in opposition to Circle K's motion for summary judgment; therefore it is waived. *City of San Antonio v. Schautteet,* 706 S.W.2d 103, 104 (Tex.1986); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 675 (Tex.1979).

## CONCLUSION

The judgment of the trial court is in all things affirmed.

Dissenting opinion by LÓPEZ, J.

LÓPEZ, Justice, dissenting.

I respectfully dissent to the majority's opinion. Unlike the out-of-state cases cited by the majority, this case is different. In the out-of-state cases, the plaintiff bought the disputed ticket from an employee of an authorized sales agent. But in this case, the ticket was *not* sold by an employee of Circle K. Instead, the person who sold the ticket to Mrs. Kinnard was the wife of the manager of the Circle K store. As a non-employee, the wife was not authorized to sell the ticket, nor was she trained to properly sell lottery tickets. As a result, the person who sold the ticket to Mrs. Kinnard violated the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 466.303(a) (Vernon Supp.1998) (criminalizing the sale of lottery tickets by persons other than an authorized sales agent or an employee of a sales agent). Because this case involves a ticket that was sold by an unauthorized person, this court is not bound by the line of cases involving the sale of lottery tickets by persons authorized to do so. Although I concur in the result as to liability of the Lottery Commission, because of the reasons set out above, I disagree that Circle K was entitled to summary judgment.