**Hershel Helen McNAMARA, Individually and as Independent Executor of the Estate of Paul Tom McNamara, Appellants,**

v.

**Coy Blann MATHIS, et al., Appellees.**

No. 10–99–063–CV.

Court of Appeals of Texas, Waco.

Oct. 18, 2000.

Opinion Granting Rehearing Jan. 10, 2001.

J. Robert Sheehy, Waco, for appellants.

Jerry P. Campbell, John P. Palmer, Keith C. Cameron, Naman, Howell, Smith & Lee, P.C., Waco, for appellees.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

GRAY, Justice.

This is an appeal from a judgment granting a motion for summary judgment. The motion was based on the grounds that Coy Mathis was not an employee of Limestone Products Distribution, Inc. or in the alternative, that he was not in the course and scope of his employment at the time of the incident which is the basis of this suit. We are asked to determine if the summary judgment motion, pleadings and evidence established either defense as a matter of law.

## FACTUAL BACKGROUND BASED ON THE ALLEGATIONS

Mathis is a truck driver. It is undisputed that three years prior to the accident involved in the present suit, he had been an employee of Limestone.

### As An Employee

As an employee, Mathis drove a truck owned by Limestone. He hauled exclusively Limestone's materials to Limestone's customers. He was not required to go to the shop every day. He would call in to see if there were materials to be hauled and the particulars of the deliveries. He was paid based upon a percentage of the price of the product that he delivered. Limestone controlled the pick-up point, the route and the delivery point. Limestone controlled the price charged for the materials delivered. Limestone furnished the truck and paid all insurance, maintenance and fuel cost. To get paid for the loads hauled, Mathis was required to present a load ticket to Limestone. There were several locations where load tickets could be turned in at Limestone for further processing. Limestone withheld the usual taxes from his check. There was no guaranteed or minimum pay. Pay was based solely on deliveries.

### After He Purchased a Truck

Roughly three years prior to the accident involved in this suit, Mathis purchased a truck from Limestone. He can haul for anyone. He calls Limestone and is told where he can pick-up materials and where they need to be delivered. He can use any route he desires. He usually uses the route used by employee drivers. Limestone contends this is because it is the shortest route. He is still paid a percentage of the price charged for the materials he delivers but the percentage is much higher. He has an arrangement with Limestone for maintenance, fuel and insurance. He still must turn in load tickets to get paid. Limestone does not withhold any taxes and reports payments to Mathis via IRS form 1099. If Mathis's truck is not operable, he uses one of Limestone's trucks. He is paid at the lower "employee" rate when using Limestone's truck. On a prior occasion, when Mathis' truck became unreliable, Limestone told him that unless he obtained a more reliable truck, he would no longer be able to haul materials for Limestone. He thereafter bought his second truck from Limestone. Limestone required him to purchase an accidental death and disability policy.

## THE ACCIDENT

Paul McNamara was killed when Mathis turned left in front of him. McNamara was riding a motorcycle. Mathis was driving his personal vehicle, not his truck. Mathis was making a left-hand turn into the business premises of Limestone. It is undisputed that Mathis had a friend with him who was an employee of Limestone. It is also undisputed that it was a holiday and they were socializing and decided to go to Limestone "to see what was going on at the shop" and turn in load tickets. The tickets were due to be turned in that day so that Limestone could pay the drivers on the usual time interval. It is disputed whether Mathis had any tickets that he was going to turn in on this trip but it is undisputed that his passenger did have some tickets that he wanted to deliver.

## PROCEDURAL BACKGROUND

Hershel Helen McNamara, Individually and as Independent Executrix of the Estate of Paul Tom McNamara (jointly "Helen"), sued Limestone and Mathis alleging that Mathis's negligence was the proximate cause of McNamara's death. Helen alleged that Mathis was an employee engaged in the course and scope of his employment at the time of the accident.

Limestone moved for summary judgment contending that Mathis was an independent contractor or in the alternative that he was not engaged in the course and scope of employment at the time of the accident. The trial court granted the motion but did not specify the grounds upon which it was granted.

Helen's claims against Limestone were severed from the claims remaining against Mathis. Helen brings this appeal claiming that judgment was not proper on either ground raised by Limestone in its motion for summary judgment.

## SUMMARY JUDGMENT BURDENS AT TRIAL

The summary judgment movant bears the burden to prove that no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Delta Air Lines, Inc. v. Norris*, 949 S.W.2d 422, 425 (Tex.App.—Waco 1997, writ denied). If the movant is the defendant, the movant must conclusively negate at least one of the elements of the non-movant's cause of action or conclusively establish every element of an affirmative defense. *Kinnard v. Circle K Stores, Inc.*, 966 S.W.2d 613, 616 (Tex.App.—San Antonio 1998, no pet.).

## STANDARD OF REVIEW ON APPEAL

On appeal, we are limited to a review of whether the judgment was proper based upon the motion, the evidence and the pleadings properly before the trial court. *See* TEX.R.CIV.P. 166a. We are further limited by the scope of the issues and arguments properly presented on appeal. *See id.* 166a(c).

When determining whether a material fact issue exists, we must accept as true all evidence favorable to the non-movant. *Nixon*, 690 S.W.2d at 548–49; *Delta Air Lines, Inc.*, 949 S.W.2d at 425. Also, we must resolve all doubts and indulge every reasonable inference in favor of the non-movant. *Nixon*, 690 S.W.2d at 549; *Delta Air Lines, Inc.*, 949 S.W.2d at 425. The purpose of a summary judgment proceeding is to determine if there are any questions of fact to be tried, not to try the cause by weighing the evidence or determining its credibility; or trying the cause by affidavit or deposition. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952); *Walls v. First State Bank of Miami*, 900 S.W.2d 117, 123 (Tex.App.—Amarillo 1995, writ denied). Summary judgment is not intended to deprive the litigants of their right to a full hearing on the merits of any real fact issue. *Kim v. State Farm Mut. Auto. Ins. Co.*, 966 S.W.2d 776, 778 (Tex.App.—Dallas 1998, no pet.).

## EMPLOYEE OR INDEPENDENT CONTRACTOR

The issue of whether a person is an employee or independent contractor is a frequently litigated issue.

The test to determine whether a worker is an employee or an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the employee's work. *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 585–90 (Tex.1964). This same test applies whether the claim arises at common law or under workers' compensation. *Elder v. Aetna Casualty & Sur. Co.,* 149 Tex. 620, 623, 236 S.W.2d 611, 613 (1951). The employer must control not merely the end sought to be accomplished, but also the means and details of its accomplishment as well. *Travelers Ins. Co. v. Ray,* 262 S.W.2d 801, 803 (Tex.Civ.App.—Eastland 1953, writ ref'd). Examples of the type of control normally exercised by an employer include when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of the work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result. *See United States Fidelity and Guar. Co. v. Goodson,* 568 S.W.2d 443, 447 (Tex.Civ. App.—Texarkana 1978, writ ref'd n.r.e.). *Thompson v. Travelers Indemnity Co. of Rhode Island,* 789 S.W.2d 277, 278–279 (Tex.1990).

The evidence presented at the summary judgment hearing does not conclusively establish that Mathis is not an employee of Limestone. While there is ample characteristics of an independent contractor relationship, there is some evidence that Limestone still controls enough of the aspects of the manner in which Mathis operates in delivering the materials for Limestone so as to raise a fact question on the issue. Thus, on the record before us we cannot say that it would have been proper for the trial court to hold that as a matter of law Mathis was not an employee of Limestone. However, this was not the only ground upon which Limestone sought summary judgment, and the judgment did not specify the ground on which it was granted. Thus, we must determine if judgment was proper on the other ground presented in Limestone's summary judgment motion.

## COURSE AND SCOPE OF EMPLOYMENT

Whether an employee is engaged in the course and scope of employment is also a frequently litigated question.

The test to determine an employer's liability for the acts of its employees is whether on the occasion in question, the master has the "right and power to direct and control [the servant] in the performance of the causal act or omission at the very instance of the act or neglect." *American Nat'l Ins. Co. v. Denke,* 128 Tex. 229, 95 S.W.2d 370, 373 (Tex.1936). In order to meet this test, the employee's act must (1) fall within the scope of the employee's general authority, (2) be in furtherance of the employer's business, and (3) be for the accomplishment of the object for which the employee was hired. *Chevron U.S.A., Inc. v. Lee,* 847 S.W.2d 354, 355 (Tex.App.—El Paso 1993, no writ).

*Direkly v. ARA Devcon, Inc.,* 866 S.W.2d 652, 654, (Tex.App.—Houston [1st Dist.] 1993, writ dism'd, w.o.j.).

As a general rule, an employee is not in the course and scope of his employment while driving his own vehicle to and from his place of work, absent other factors. *Wilson [v. H.E. Butt Grocery Co.,]* 758 S.W.2d [904,] at 907 [(Tex. App.—Corpus Christi 1988, no writ)]; *London [v. Texas Power & Light Co.],* 620 S.W.2d [718,] at 720 (Tex.Civ.App.— Dallas 1981, no writ); *American Nat. Ins. Co. v. O'Neal,* 107 S.W.2d 927 (Tex. Civ.App.—San Antonio 1937, no writ). However, an exception to the general rule exists where an employee has un-

dertaken a special mission at the direction of his employer or is otherwise performing a service in furtherance of the employer's business with the express or implied approval of the employer. *Gebert v. Clifton,* 553 S.W.2d 230, 232 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ dismissed). *Chevron, U.S.A., Inc. v. Lee,* 847 S.W.2d 354, 356 (Tex.App.—El Paso 1993, no writ).

■ The strongest inference that can be drawn from the summary judgment evidence is that if Mathis was an employee, he was traveling between his home and his work for the purpose of performing a normal function of his employment, the delivery of load tickets. Because the delivery of load tickets was a normal part of Mathis's employment, the normal travel to and from his place of employment was not a special mission.[1] There were multiple locations where load tickets could be delivered. While Limestone may have determined a time frame by which they wanted the load tickets turned in for processing, they did not control the manner and means of the delivery process.

## SUMMARY

Thus, to restate, in this case, the strongest inference that can be drawn from the summary judgment evidence is that Mathis was traveling to his usual place of employment to perform a normal function of his job upon his arrival. The trial court did not err in granting summary judgment on this ground. The trial court's judgment is affirmed.

## OPINION ON REHEARING

VANCE, Justice.

Hershel McNamara filed a motion for rehearing, asserting that we were mistaken about the status of the summary judgment evidence on the question of whether the driver of the vehicle, Mathis, was acting in the course and scope of his employment with Limestone. We requested a response from Limestone and, after further review, conclude that McNamara is correct. Thus, we grant the motion for rehearing and issue this opinion.

The parties urge different views of an exception to the "to and from work" rule. In *Direkly v. ARA Devcon, Inc.,* which we cited on original submission, the First Court of Appeals said:

An employee generally is not in the course and scope of employment while driving a vehicle to and from his place of work. *London v. Texas Power & Light Co.,* 620 S.W.2d 718, 720 (Tex.Civ.App.—Dallas 1981, no writ). However, an exception to this general rule exists "where an employee has undertaken a special mission at the direction of his employer. . . ." *Chevron U.S.A., Inc.,* 847 S.W.2d at 356 (emphasis added). To be on a special mission, an employee must be under the control or acting in furtherance of the employer. *Id.*

866 S.W.2d 652, 654 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.). McNamara says the "special mission" exception is met when the employee is (1) under the control of the employer or (2) acting in furtherance of the employer. Limestone says we should read the "or" as an "and."

■ We do not decide that question. Rather, on further review we believe that we misapplied the summary judgment standard which we set forth in the opinion, in that we failed to "accept as true all evidence favorable to the non-movant" and failed to "resolve all doubts and indulge every reasonable inference in favor of the non-movant." *Nixon v. Mr. Property*

1. The cases applying the exception of "special mission" to the "traveling to and from work" doctrine generally fall into one of two categories. Either the employee is traveling on a mission that is not part of his usual job duties or he is performing a special task for the employer, which is not part of his usual job duties, and is traveling to or from his usual place of employment to perform the special task.

*Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Delta Air Lines, Inc. v. Norris,* 949 S.W.2d 422, 425 (Tex.App.—Waco 1997, writ denied). For purposes of this opinion, having determined on original submission that a fact issue exists on the issue, we assume that Mathis was an employee of Limestone.

McNamara points out in his motion for rehearing that the summary judgment evidence supports an established procedure for Limestone's drivers to turn in their tickets as a separate function from the pickup and delivery of loads of materials. Furthermore, he says, most of the tickets are turned in on Sunday, a non-work day, and the summary judgment evidence shows that the event made the basis of this suit occurred on January 20, 1997, which was a holiday. Finally, he points to Mathis' statements to third parties that he was taking tickets to the office and to Mrs. White's deposition testimony that she was in the office at the time of the event.

Applying the summary judgment standard by accepting as true all evidence favorable to the non-movant, McNamara, and resolving all doubts and indulging every reasonable inference in his favor, we hold that the summary judgment evidence creates a fact issue concerning whether Mathis was acting in the course and scope of his employment. *Direkly,* 866 S.W.2d at 654; *Nixon,* 690 S.W.2d at 548–49; *Delta Air Lines, Inc.,* 949 S.W.2d at 425.

Having found in our opinion on original submission that an issue of fact exists about whether Mathis was an independent contractor or an employee and finding on rehearing that a fact issue exists about the course and scope of his employment, if he was an employee, we reverse the summary judgment and remand the cause for trial.

The judgment dated October 18, 2000, is withdrawn. Judgment dated January 10, 2001, is substituted therefor.

Justice GRAY dissenting.

GRAY, Justice, dissenting on rehearing.

Reversal of the summary judgment on the basis that a fact issue was raised would be a much "easier" way to resolve this appeal, for many reasons, not the least of which is avoiding the need to wade through a voluminous record and the ease of "giving the plaintiffs their day in court." However, my duty is not to take the easy way out, but rather to determine, based upon the applicable law, if Limestone has proven, as a matter of law that it is entitled to judgment. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). Because I believe our original opinion fully addresses the merits of the appeal, discusses the applicable law and properly resolves the matter, I will not elaborate on the legal analysis. Rather, I will deal with the practical analysis of the Opinion on Rehearing and explore its extraordinary ramifications.

Whether the majority will admit it or not, they are extending the rule for application of liability to employers for acts of employees while traveling to and from work. If you take every "fact" set out in the Opinion on Rehearing as true, as we must and as we did in the original opinion, the most that can be said is that Mathis was on his way to work in his personal vehicle, to perform a normal function of his employment. Travel to and from the workplace by the employee is a recognized exception to vicarious liability of the employer. *Chevron, U.S.A., Inc. v. Lee,* 847 S.W.2d 354, 356 (Tex.App.—El Paso 1993, no writ)(and cases cited therein).

If these facts create an issue of whether Mathis was in the course and scope of his employment, and thus whether Limestone could be liable for damages resulting from his negligence, we have created an entirely new area of liability for every employer in Texas. Anytime that an employee goes to the office, intends to stop by the office, or just decides to stop by the office, to perform a routine function of their job, there will be potential liability for the employer

if they are carrying anything related to the job with them.

An employee that stops by the office to drop off a time sheet, a project report or any other of the myriad of normal functions of an employee while at work, suddenly turns that trip into a "special mission" on behalf of the employer. With the growth of performing work at home, every employee that is transferring documents (including electronic copies) from work to home will be subjecting the employer to potential liability for the employee's negligence while traveling to and from work with those documents.

The potential ramifications of this errant decision are enormous. I wonder if Mathis's automobile insurer knows that he is using his personal mini-van for company business? Does Mathis's personal automobile insurance policy cover him, his vehicle, his passengers or others injured while he is engaged in utilizing his personal vehicle for Limestone's business? Will the employer also be subjected to liability for wages, overtime pay, and benefits, for those employees entitled to hourly compensation, for the time during the trip? Additionally, if the employee is engaged in the course and scope of employment, the employee's injuries, like those of Mathis and the co-worker that was with him, are injuries incurred in the course and scope of employment and thus covered, not by Mathis's personal insurance carrier, but by Limestone's workers compensation carrier. Also, federal wage and hour laws, and the ensuing penalties, will be applicable for the uncompensated time of employees while engaged in the course and scope of employment traveling to and from work. And, if Mathis is engaged in the course and scope of employment, the co-worker with him cannot sue Mathis (fellow servant doctrine), but a guest passenger will be able to sue Limestone.

I believe the existing law is clear. If Mathis was an employee, he was engaged in nothing more than a routine trip to his place of employment when he was involved in an automobile/motorcycle collision resulting in the death of Mr. McNamara. It was a tragic event and Mr. McNamara's family may be entitled to compensation for his death. But the law the majority creates to allow them to recover from Limestone is not supported by existing law, nor should we extend existing law to make Limestone liable on these facts. Because the majority holds that on these facts it could be determined that Mathis was acting in the course and scope of his employment for which Limestone would thus be liable if Mathis was negligent, I respectfully dissent.