BP Oil Company ("BP Oil") and Marketing Corporation of America ("MCA") sued *Page 886 
Larry Johnson and Daniel L. Brown, seeking a judgment declaring that neither Johnson nor Brown was entitled to a BMW automobile that was being offered in a promotional contest. In the alternative to its request for a declaratory judgment, BP Oil and MCA interpleaded those parties claiming the BMW.
Johnson counterclaimed, alleging breach of contract and fraud and seeking damages equal to the value of the BMW. Brown counterclaimed for an attorney fee. Brown also moved for a partial summary judgment on the issue of an attorney fee.
BP Oil and MCA moved to dismiss the fraud claim on the grounds that Johnson had failed to specifically plead that BP Oil and MCA, at the time the promotional contest was posted, did not intend to award the BMW and that BP Oil and MCA, at that time, intended to deceive Johnson. BP Oil and MCA also sought a summary judgment on the breach of contract claim. The trial court granted BP Oil and MCA's motion to dismiss the fraud claim, and entered a summary judgment against Johnson's breach of contract claim and Brown's attorney fee claim. The trial court held that MCA's decision not to award the BMW to Johnson was final and binding. The trial court also held that Brown was not a participant in the contest and, therefore, was not eligible for the BMW prize. Brown did not appeal the trial court's judgment, and he is not involved in this case. Johnson appealed the judgment in favor of BP Oil and MCA on the breach of contract claim; Johnson did not appeal as to the fraud claim. We reverse.
On October 22, 1989, BP Oil, with the assistance of MCA, began a promotional contest called "License Plate Jackpot." MCA is engaged in the business of marketing consulting, and it regularly advises and assists its clients in conducting promotional programs. MCA entered a contract with BP Oil whereby MCA agreed to design a promotional contest and serve as the judging organization for it.
The license plate jackpot required consumers to compare the license plate numbers on their automobiles to preselected license plate numbers posted weekly in BP Oil's gasoline stations. This promotion was conducted in 13 states, including Alabama. If a person's license plate number exactly matched the posted license plate, he or she could win a new 1989 BMW 325, valued at $20,000 to $23,000.
Upon learning of this contest, Johnson used public records to determine the owner of the automobile whose license plate matched the preselected license plate. Johnson then approached the owner, Brown, and negotiated to purchase the car. On October 26, 1989, Brown sold the automobile to Johnson for $650, unaware of the license plate jackpot. After Johnson acquired the car, he timely telephoned MCA to claim the BMW. Sometime thereafter, MCA sent Johnson prize claim forms to complete. Johnson timely completed the forms and returned the forms to MCA, along with a registration certificate indicating that he was the owner of the automobile bearing the matching license plate. In Alabama, a license plate number transfers with the sale of the vehicle for which it is registered.
The "License Plate Jackpot Official Rules" contained the following provisions:
 "License Plate Jackpot begins on October 22, 1989. To play, compare your license plate number (number includes Alpha and Numerical identification appearing on your vehicle's metal license plate and on the state motor vehicle registration card for that vehicle registered in your name) to the Winning License Plate Numbers on a License Plate Jackpot Winning License Plate Display Poster. If the license plate number on your vehicle and registration exactly matches a Winning License Plate Number on the Display Poster for your state for the week indicated on the poster, you win the prize indicated.
". . . .
 "5. VALIDATION: License Plate Jackpot promotion materials and submissions are subject to validation by a judging organization. By taking part in this promotion, participants agree to be bound by these rules and all decisions of the *Page 887 
judging organization, whose decisions are final on all aspects of the promotion. Promotion materials and prize claims void if not legible or completed in full, if not obtained legitimately, or if forged, reproduced, duplicated, mutilated or tampered with. . . . Persons claiming a BMW prize may be required to sign and return, within 5 business days of notification, Verification/Validation forms, including an affidavit of compliance with these rules, a prize release and a release for the use of their names and likenesses for publicity purposes by BP Oil Company without further consideration. Failure to sign and return these forms within such time period may result in disqualification."
(Emphasis added.) In order to obtain the prize claim forms, Johnson had to show proof of ownership of the car. Johnson argues that he complied with all requirements of the contest. MCA argues that Johnson obtained the prize claim forms "illegitimately" because he obtained the car in a manner that MCA says did not comport with Alabama trade practices and his obtaining the car then enabled him to obtain the prize claim forms.
During the process of validating Johnson's claim, MCA discovered that on October 22, 1989, the day the contest began, Brown had been the owner of the automobile bearing the matching license plate and that Johnson had subsequently obtained ownership. MCA denied Johnson's claim on the ground that his "prize claim was not 'obtained legitimately' " within the meaning of Rule 5 of the Official Rules of the promotion. MCA wrote Johnson: "This decision is based on a determination that you acquired the vehicle bearing the Week 1 Winning License Plate Number in a manner that appears to violate Alabama law prohibiting fraud and deceptive trade practices, the common law of contracts, and commonly accepted standards of fair dealing."
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for entering summary judgment. The rule requires the trial court to determine (1) that there is no genuine issue of material fact, and (2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the moving party by this rule have often been discussed by this Court:
 " 'The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601 (Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala. 1980).' "
Berner v. Caldwell, 543 So.2d 686, 688 (Ala. 1989) (quoting Schoen v. Gulledge, 481 So.2d 1094 (Ala. 1985)).
The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756,758 (Ala. 1986); Harrell v. Reynolds Metals Co.,495 So.2d 1381 (Ala. 1986). See also Hanners v. BalfourGuthrie, Inc., 564 So.2d 412 (Ala. 1990).
Because this action was not pending on June 11, 1987, Ala. Code 1975, § 12-21-12, mandates that the nonmovant meet his burden by "substantial evidence." Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence test, the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989). More simply stated, "[a]n *Page 888 
issue is genuine if reasonable persons could disagree." Schwarzer, Summary Judgment Under the Federal Rules:Defining Genuine Issues of Material Fact, 99 F.R.D. 465,481 (1982).
The parties agree that no Alabama law on point exists. Although the parties have submitted no Alabama law even discussing this problem, several cases from other jurisdictions have concluded that a contractual relationship exists between the promoter of a contest and the person who enters the contest and complies with the terms of the contest rules. Other jurisdictions have also concluded that although the official rules state that the judging organization's decision is final and binding, there are situations in which a court must overrule the judging organization's decision. Ahrens v.McDaniel, 287 S.C. 63, 336 S.E.2d 505, 507 (App. 1985). See Bridges v. Georgiana, 211 N.J. Super. 427,511 A.2d 1255 (1985); Wassyng v. Disabled American Veterans ServiceFoundation, 92 F. Supp. 275 (S.D.N.Y. 1950) (in the absence of fraud or gross mistake implying bad faith, the judging organization's decision is binding); Furgiele v. DisabledAmerican Veterans Service Foundation, 116 F. Supp. 375
(S.D.N.Y. 1952), aff'd, 207 F.2d 957 (2d Cir. 1953) (plaintiffs were bound by the decision of the committee in the absence of fraud, gross mistake, irregularity, or lack of good faith);Gillmore v. Procter Gamble Co., 417 F.2d 615 (6th Cir. 1969) ("the courts will not interfere with the decision of the judges, unless there has been a fraud, intentional or gross mistake, irregularity, or lack of good faith").
A good example of the rationale of these cases is set out inNational Amateur Bowlers, Inc. v. Tassos, 715 F. Supp. 323
D.Kan. 1989). Randolf Tassos and Sylvester Massa competed in a bowling tournament sponsored by National Amateur Bowlers, Inc. (NABI). The grand prize to be awarded the winner was a 1988 model automobile. Tassos participated in the final game and defeated Massa and was declared the winner of the automobile. Massa won the second prize. Subsequently, Tassos was disqualified for failing to comply with the official rules, which required a participant to file an NABI "Publicity Release Form" with a complete bowling history. Despite Tassos's concession that his publicity release form did not contain a complete bowling history, he claimed entitlement to the automobile. NABI filed an interpleader action to determine who was entitled to the automobile, Tassos or Massa. The United States District Court in Kansas held:
 "The offer of a prize for the performance of a specified act in a contest . . . constitutes the first part of the normal offer-acceptance-consideration equation for the formation of an enforceable contract. By competing in the contest, a competitor accepts the offer; by performing the specified act required for winning the contest, he provides the necessary consideration. . . . Furthermore, it has been long settled that when a contestant agrees to be bound by the decisions of a tournament director or an awards committee, such decisions are final and binding on contestants absent fraud, gross mistake, or lack of good faith. Defendant Tassos offers no evidence which would tend to indicate that [the awards committee] disqualified him from the contest in bad faith or that his disqualification resulted from fraud or gross mistake. Consequently, defendant Tassos is bound by [the] decision to disqualify him, as he agreed to be bound."
National Amateur Bowlers, Inc. v. Tassos,715 F. Supp. at 325 (Citations omitted.)
We adopt the rule that running a promotional contest is in the nature of an offer and that an enforceable contract is formed when a party accepts that offer and provides consideration by entering the contest and complying with all of the terms of the offer. We further adopt the rule that unless there was fraud, irregularity, intentional misconduct, gross mistake, or lack of good faith involved in the contest, the judging organization's decision is binding.
The issue in this case can be stated as follows: Given that Johnson held legal title to the automobile with the selected plate number, was his method of acquiring it such as to justify reasonable people interpreting *Page 889 
the Official Rules to conclude that the automobile plate, and then the prize claim forms, were not obtained "legitimately" and, if the answer is yes, then was there nevertheless substantial evidence that in reaching that conclusion the contest judge acted in bad faith?
Our review of the record leads us to conclude that the trial court erred in entering the summary judgment with regard to the breach of contract claim.
Johnson argues that a contractual relationship exists between BP Oil, MCA, and himself. An offer was made by BP Oil and MCA when the promotional contest began. Johnson argues that he entered the contest and complied with the terms of the Official Rules of the license plate jackpot and that an enforceable contract was thereby formed.
In opposition to the summary judgment, Johnson argues that there remains a genuine issue of material fact as to whether MCA, in its judging process, acted in good faith. Johnson argues that the following evidence establishes an issue of fact as to MCA's good faith: First, Johnson maintains that MCA had an interest in the outcome of the case because it was the creator of the contest and was highly compensated for this project. Second, Johnson maintains that MCA substantially miscalculated the design of the contest, that is, that the amount of money BP Oil spent in awarding prizes significantly exceeded the amount MCA originally predicted BP Oil would spend. MCA had predicted that 2 or 3 vehicles would be given away during the first week of the contest, but at least 11 vehicles were actually awarded that week. During the second, third, and fourth weeks of the contest, 6, 8, and 12 BMWs were awarded, respectively. As a result of MCA's error, BP Oil's economic liability in the contest far exceeded its expectation. Johnson argues that "MCA's decision was not one deciding whether Johnson or Brown would obtain the vehicle, but rather whether their client, BP Oil, would have to pay over $20,000.00 to $23,000.00 to another claimant." Johnson further argues that BP Oil and MCA stood to profit from the decision rendered by MCA. Johnson submits that MCA therefore had a strong incentive to deny his claim so as not to further enhance BP Oil's loss ratio.
In response, MCA argues that it acted with the utmost good faith. MCA states that every legitimate claim for a BMW was honored and that the only reason Johnson's claim was dishonored was that Johnson had obtained the prize claim forms "illegitimately." MCA argues that because Johnson failed to inform Brown of his true reasons for purchasing the vehicle bearing the matching license plate, the prize claim forms were obtained "illegitimately," in violation of Rule 5 of the Official Rules of the license plate jackpot.
MCA's argument is flawed in several respects. First, although MCA denied the claim on the basis that Johnson's behavior "appears to be tortious under state law, or to be void or voidable under state law, or is a practice which offends public policy or is unethical, oppressive, unscrupulous or contrary to fundamental concepts of fairness," MCA has not shown that Johnson had a legal duty to disclose information concerning the promotional contest. No law in Alabama denies a party the right to negotiate at arm's length with another concerning the purchase of an automobile. Further, Brown indicated that at the time of the sale he considered $650 to be a fair price for the 10-year-old automobile. Finally, there is no indication that Johnson's actions constituted fraud. The license plate jackpot was well publicized, and Brown had the same access to the contest information as did Johnson.
Second, the Official Rules do not prohibit a person from obtaining the vehicle bearing the matching license plate from the original owner in the manner in which Johnson obtained it. The rule required a person to compare his or her license plate to the winning license plate and provided that if the plates exactly matched, the person would win a BMW. The other requirements were that the claim forms be legitimately obtained, and that they be completed in a timely manner. The rules say nothing about how the car is obtained. Johnson argues that he fully complied with these requirements. *Page 890 
We conclude that the first part of the issue as stated above must be answered in the negative. That is, the contest judge's decision that the car, and then the claim forms, were not obtained "legitimately" was based upon considerations other than requirements set out in the Official Rules. Even if the facts were viewed in the light most unfavorable to Johnson, a reasonable person applying the Official Rules to these facts could not fairly conclude that Johnson had failed to meet the "obtained legitimately" provision. Any conclusion that he had was necessarily a "gross mistake" or an "irregularity."
Nevertheless, although we need not answer the second part of the issue stated above, as to that part we would conclude that even if reasonable people interpreting the rules could conclude that the claim forms were obtained illegitimately, Johnson presented substantial evidence that MCA reached that conclusion in bad faith.
The evidence relied upon by BP and MCA did not make a prima facie showing that Johnson had obtained the claim forms illegitimately. Thus, they were not entitled to a summary judgment. Accordingly, the summary judgment is reversed as to the breach of contract claim, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
ALMON, ADAMS, STEAGALL and INGRAM, JJ., concur.