Fiorello v. Hewlett-Packard          CV-03-282-M    11/14/03
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Michael Fiorello,
      Plaintiff

      v.                                  Civil No. 03-282-M
                                          Opinion No. 2003 DNH 195
Hewlett-Packard Company
d/b/a Hewlett-Packard
Company, Inc.,
      Defendant


                           O R D E R


      Michael Fiorello, a Hewlett-Packard Company sales

representative, is suing for breach of contract.  The case was

removed from the New Hampshire Superior Court.  Before the court

is defendant's motion to dismiss (document no. 5).  Plaintiff

objects.  For the reasons given below, defendant's motion to

dismiss is denied.



                      The Legal Standard

      A motion to dismiss for "failure to state a claim upon which

relief can be granted," FED. R. CIV. P. 12(b)(6), requires the

court to conduct a limited inquiry, focusing not on "whether a

plaintiff will ultimately prevail but whether the claimant is

entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). When considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), the court must "accept as true all well-pleaded allegations and give plaintiffs the benefit of all reasonable inferences." Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999) (citing Gross v. Summa Four, Inc., 93 F.3d 987, 991 (1st Cir. 1996)). "Dismissal under Fed.R.Civ.P. 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." Cooperman, 171 F.3d at 46 (citing Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989)).

## Background

The facts of this case, taken from plaintiff's complaint and presumed to be true, are as follows.

At all times relevant to this matter, plaintiff was employed by Hewlett-Packard as an inside sales representative. On May 16, 2000, plaintiff was told by another sales representative that on May 18, the company was going to hold a drawing for a "bonus award" of $100,000, and that the drawing was open to all sales

2

representatives who had achieved 150 percent or more of their sales goals. Plaintiff had no prior notice of the drawing from the company, and never saw the rules governing the drawing until approximately one week after it was conducted. Because plaintiff had achieved more than 150 percent of his sales goal, he qualified for the drawing.

On May 18, two days after he learned about the drawing from his co-worker, plaintiff signed into a teleconference to listen to the drawing. Before the drawing, a management representative said that all sales representatives who had achieved at least 150 percent of their sales goals were eligible to win a $100,000 bonus award. Then the management representative announced that plaintiff was the winner of the sales bonus, and instructed him to join the teleconference. Plaintiff did so, by dialing *1 on his telephone, and thanked the company for the bonus.

Within several hours of the teleconference, plaintiff checked his voice mail and learned that he had a message from Hewlett-Packard's Regional Director of Sales for the Northeast, who congratulated him on winning the bonus. Plaintiff received a

similar message from a Hewlett-Packard District Manager.  That same evening, plaintiff received a third voice mail message from Hewlett-Packard's Specialty Sales Server, Drew Caola, who informed him that the rules for the award drawing had not been made clear during the teleconference, that plaintiff had not won the $100,000 personally, and that the award was to be split among his full sales team, based upon the team's sales commission formula.  Based upon that formula, plaintiff was told that his share was three percent, or $3,000.  Plaintiff was then told that the rules for the drawing were available on a web site, and that he could direct any further questions to Hewlett-Packard's General Manager, Joseph Cinque.

Plaintiff checked the web site on May 19, but was unable to find any rules.  On May 20, he received a message from Cinque, who was returning plaintiff's telephone call.  Cinque's message informed plaintiff that his winnings would be paid by check, in late June.  Cinque also indicated that he (Cinque) would have to check the rules for the drawing, and in particular the rules about "teaming," to make sure that the award was disbursed in accordance with those rules.

4

On May 25, Caola sent plaintiff a copy of the rules. On June 1, plaintiff's sales team was informed by Hewlett-Packard management that they were to share the $100,000 bonus. On June 15, plaintiff was paid $10,000, rather than $3,000. However, management failed to pay two members of plaintiff's sales team the amounts to which they would have been entitled under the team's sales commission formula.

After he was paid $10,000, plaintiff made demand for an additional $90,000. When defendant failed to comply, plaintiff filed this suit, asserting a claim for breach of contract.

## Discussion

Defendant moves to dismiss, arguing that plaintiff's complaint fails to allege facts sufficient to establish any of the four essential elements of a bilateral contract: offer, acceptance, consideration, and a meeting of the minds. Plaintiff meets defendant on defendant's own ground, arguing that he has indeed pled facts which, if proven, would establish all four elements. Both parties appear to miss the mark by framing the issue in terms of bilateral contract principles.

This case stands at the intersection of two distinct lines of unilateral contract cases. One line deals with contests. See, e.g., Barnes v. McDonald's Corp., 72 F. Supp. 2d 1038, 1042 (E.D. Ark. 1999) (quoting Johnson v. BP Oil Co., 602 So.2d 885, 888 (Ala. 1992) ("We adopt the rule that running a promotional contest is in the nature of an offer and that an enforceable contract is formed when the party accepts that offer and provides consideration by entering the contest and complying with all the terms of the offer."). The second line of cases pertains to offers of compensation bonuses to at-will employees. See, e.g., Kaplan v. Aspen Knolls Corp., ___ F. Supp. 2d ___, ___, 2003 WL 22533497 (E.D.N.Y. 2003) ("continued service by an at-will employee is sufficient consideration to support an employer's promise to pay an at-will employee a bonus") (citing Levy v. Lucent Techs. Inc., No. 01 Civ. 2936(MBM), 2003 WL 118500, at *9-10 (S.D.N.Y. Jan. 14, 2003).

Here, limiting consideration to the complaint only, it would appear that defendant promised to give a certain group of at-will employees a compensation bonus in the form of the right to participate in a drawing for a cash award. Because neither party

6

has yet framed the issues in those terms, <u>i.e.</u>, the terms of unilateral contracting, and because it is not apparent that the facts alleged by plaintiff could not support a cause of action for breach of a unilateral contract, defendant's motion to dismiss is necessarily denied.  Resolution of this dispute on a motion to dismiss is unlikely; summary judgment may prove more useful in determining just what the undisputed material facts are, and whether a legal cause of action exists.

## Conclusion

The motion to dismiss (document no. 5) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 14, 2003

cc:  John R. Baraniak, Jr., Esq.
     John V. Dwyer, Esq.
     Michael J. Fontaine, Esq.

7