# United States Court of Appeals for the Federal Circuit

---

**DAVID FRANKEL,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2015-5146

---

Appeal from the United States Court of Federal Claims in No. 13-546C, Judge Thomas C. Wheeler.

---

Decided: December 1, 2016

---

MATTHEW JAMES DOWD, Dowd PLLC, Washington, DC, argued for plaintiff-appellant.

MEEN GEU OH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM; THEODORE P. METZLER, Office of General Counsel, Federal Trade Commission, Washington, DC.

---

Before PROST, *Chief Judge*, NEWMAN and DYK, *Circuit Judges.*

PROST, *Chief Judge.*

This appeal arises from plaintiff David Frankel's suit against the United States in the Court of Federal Claims for events arising out of the "Robocall Challenge," a prize competition sponsored by the United States Federal Trade Commission ("FTC"). Proceeding pro se, Mr. Frankel requested that the FTC rescore the contest entries and sought money damages. The Court of Federal Claims construed Mr. Frankel's rescoring request as seeking injunctive relief under the bid protest provisions of 28 U.S.C. § 1491(b) and his request for money damages as a breach of contract claim. The Court of Federal Claims subsequently dismissed the request for injunctive relief for failure to state a claim and, after discovery, granted summary judgment in favor of the government on the breach of contract claim. Mr. Frankel now appeals those rulings.

For the reasons discussed below, we affirm.

BACKGROUND

On October 23, 2012, the FTC announced the "Robocall Challenge," a prize competition under 15 U.S.C. § 3719(b). J.A. 43. Members of the public were invited to participate by "creat[ing] innovative solutions to block illegal robocalls."[1] *Id.* Under the competition rules, each submission would be evaluated by a panel of judges based on three criteria—(1) whether the solution would successfully block robocalls, worth 50%; (2) how easily could a consumer use the solution, worth 25%; and (3) whether the solution could feasibly be implemented in practice, worth 25%. After judging, the submission with "the

---

[1]    A "robocall" is an automated sales call.

highest overall scores" would be awarded a $50,000 prize. J.A. 46–47. As conditions of entry, contestants granted the FTC "non-exclusive, irrevocable, royalty free and worldwide license to use" their submissions, and agreed to release the FTC from "any and all liability in connection with the Prizes or Contestant[s'] participation in the Contest." J.A. 45, 49.

By the end of the competition, the FTC received close to 800 submissions. After a preliminary review, of these, 266 were forwarded to the judges for consideration. The contest rules provided limited guidance to the judges. The only express limitations on their discretion were that judges were required to be impartial and to evaluate submissions based on the criteria identified in the rules. Accordingly, at the start of the judging process, the FTC informed the judges that they did not need to provide a numerical score for each submission and were free to communicate with each other at any time.

Due to the large number of submissions, the judges determined that they would need a way to cull the submissions to a group of finalists. After reviewing the forwarded submissions, the judges decided that the front-runners would be those entries that proposed using filtering as a service ("FaaS") to block robocalls. The judges based this decision, in part, on a belief that other solutions would not work. Having made this determination, the judges then proceeded to numerically score the FaaS solutions to find the winning submissions. After the judges finished their deliberations, they announced the winners. The judges also released the numerical scores for the two winning entries, which had tied.

Mr. Frankel is the author of a submission that was among the entries given to the judges, but not ultimately selected. Unlike the winning entries, which were FaaS solutions, Mr. Frankel's submission proposed a "traceback" solution, which would trace a robocall back to its

source number, which could then be blocked. Though neither selected as a front-runner nor scored by all three judges, Mr. Frankel's submission did receive a numerical score from one judge which was the same as the score awarded to the winning entries.

Believing his submission to be superior to the FaaS solutions, Mr. Frankel filed suit against the government in the Court of Federal Claims seeking to have the FTC rescore all the submissions. In addition, Mr. Frankel asked that, if the Court of Federal Claims were to grant his request, he "be compensated for his time and expenses in bringing the action."

In response to Mr. Frankel's complaint, the government moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Rules of the U.S. Court of Federal Claims ("RCFC"). The Court of Federal Claims construed Mr. Frankel's request that the submissions be rescored as seeking injunctive relief under the bid protest provisions of 28 U.S.C. § 1491(b). The court granted the government's motion in part. Reasoning that the Robocall Challenge was neither a procurement, nor a proposed procurement, the court determined that injunctive relief was not available. However, the court determined that the complaint made out a claim that a contract had been formed between the FTC and each contestant when the contestant submitted an entry under the competition rules, and that the FTC allegedly breached the contract.

At the end of discovery, the government moved for summary judgment in its favor, arguing that Mr. Frankel's claim was foreclosed by the release clause present in the competition rules and, in the alternative, that Mr. Frankel did not present evidence of "any fraud, bad faith, gross mistake, or dishonesty on the part of the judges." J.A. 2. The court granted the government's motion. In doing so, the court determined that the evidence presented did not show that the contest was con-

ducted unfairly or fraudulently. In the alternative, the court determined that, without evidence of fraud or bad faith, Mr. Frankel's claim was barred by the liability waiver provision of the rules. This appeal followed.

We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### I

We review a grant of a motion to dismiss for failure to state a claim de novo. *Prairie Cty., Mont. v. United States*, 782 F.3d 685, 688 (Fed. Cir. 2015). To withstand a motion to dismiss under Rule 12(b)(6) of the RCFC, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss, a court is required to accept as true all factual allegations pleaded. *Id.* However, courts are not required to accept a complaint's legal conclusions. *Id.*

We review a grant of summary judgment de novo. *Suess v. United States*, 535 F.3d 1348, 1359 (Fed. Cir. 2008). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). On a motion for summary judgment, "all evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the non-moving party." *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994).

### II

We first address Mr. Frankel's appeal of the dismissal

of his claim under 28 U.S.C. § 1491(b). On appeal, the parties do not dispute that Mr. Frankel and the FTC entered into a binding contract when Mr. Frankel submitted his entry in response to the government's prize competition announcement. The nature of the relationship between a contestant and a sponsoring agency arising out of a prize competition under 15 U.S.C. § 3719 is a question of first impression. In the contest context, the majority of courts have long interpreted announcement of a contest as a contractual offer by a sponsor and entry into the contest by a contestant as acceptance of that offer. *See, e.g., Nat'l Amateur Bowlers, Inc. v. Tassos*, 715 F. Supp. 323, 325 (D. Kan. 1989); *Johnson v. BP Oil Co.*, 602 So. 2d 885, 888 (Ala. 1992). We agree with this view.

Though the parties do not dispute the existence of a contract, they do dispute the nature of this contract. Mr. Frankel argues that his contract with the FTC is a procurement contract. As such, Mr. Frankel would have standing to object to the prize award because the competition resulted in "the award of a contract . . . in connection with a procurement or a proposed procurement." *See* 28 U.S.C. § 1491(b)(1).

The government argues that a prize competition is not a procurement contract because, for every prize competition, the agency is required to explain why a prize competition would be preferable "as opposed to other authorities available to the agency, such as contracts, grants, and cooperative agreements." *See* 15 U.S.C. § 3719(p)(2)(B). Thus, according to the government, prize competitions are distinct from procurement contracts.

Whether a government contract is a procurement contract is a legal question of statutory interpretation. *See Wesleyan Co. v. Harvey*, 454 F.3d 1375, 1378 (Fed. Cir. 2006). As written, the language of § 3719(p)(2)(B) strongly implies that prize competitions are distinct from "contracts" because the statute contrasts prize competitions

with other authorities available to an agency. However, in isolation, the meaning of "contracts" is unclear. If "contracts" were to refer to all contracts, it would render the term meaningless because, as the parties agree, a contract between the contestants and the agency is formed when a contestant submits an entry. There would be no difference between prize competitions and contracts. Because "a statute is to be construed in a way which gives meaning and effect to all of its parts," the term must therefore be given a meaning that is narrower than any contract between an agency and a contestant. *See Heinzelman v. Sec'y of Health & Human Servs.*, 681 F.3d 1374, 1379 (Fed. Cir. 2012).

In order to construe the term, we look to the surrounding context under the interpretive canon of *noscitur a sociis*. "This maxim, literally translated as 'it is known by its associates,' counsels lawyers reading statutes that a word may be known by the company it keeps." *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 287 (2010).

Here, the term "contracts" is followed by "grants" and "cooperative agreements." These latter terms relate to the government "acquiring property and services" and are discussed in Title 31, Chapter 63 of the United States Code. *See* 31 U.S.C. § 6301(1). In passing this chapter, Congress expressed a desire to "promote increased discipline in selecting and using *procurement contracts*, grant agreements, and cooperative agreements . . . ." *Id.* § 6301(3) (emphasis added). Thus, Congress viewed grants and cooperative agreements as alternatives to procurement contracts. *See id.*; *see also id.* §§ 6303–05 (detailing rules for the use of procurement contracts, grant agreements, and cooperative agreements). Because 15 U.S.C. § 3719(p)(2)(B) distinguishes prize competitions from "contracts, grants, and cooperative agreements," and because grants and cooperative agreements are alterna-

tives to procurement contracts, it follows that, in this context, "contracts" are "procurement contracts."

Therefore, we agree with the Court of Federal Claims that Mr. Frankel's contract with the FTC arising out of the Robocall Challenge was not a procurement contract and, consequently, Mr. Frankel did not have standing to register an objection to the prize award under 28 U.S.C. § 1491(b).

## III

We next turn to Mr. Frankel's appeal of the grant of summary judgment of his monetary claims. In a contract arising out of a prize competition, the parties are bound by the terms and conditions of the contest; contestants agree to abide by any eligibility requirements present, and the sponsor agrees to consider eligible entries for a prize. *See, e.g.*, *Scott v. People's Monthly Co.*, 228 N.W. 263, 265–66 (Iowa 1929); *Johnson v. N.Y. Daily News*, 97 A.D.2d 458, 458 (N.Y. App. Div. 1983), *aff'd without opinion*, 462 N.E.2d 839 (N.Y. 1984). When, as here, the terms and conditions of a contest include a limitation of liability, a breach of contract claim brought by an unsuccessful competitor will generally succeed only if the plaintiff shows "fraud, irregularity, intentional misconduct, gross mistake, or lack of good faith involved in the contest." *BP Oil Co.*, 602 So. 2d at 888 (collecting cases); *see also Tassos*, 715 F. Supp. 323 at 325 (collecting cases). Clear rule violations may fall into one of these categories. *See Groves v. Carolene Prods. Co.*, 57 N.E.2d 507, 509 (Ill. App. 1944).

Mr. Frankel does not argue that there was fraud, intentional misconduct, or a lack of good faith by the FTC. Instead, Mr. Frankel argues that there was irregularity and gross mistake when the judges failed to provide numerical scores to all eligible submissions, determined that only entries proposing FaaS solutions would be

eligible to win, and did not appropriately apply the published judging criteria.

These arguments are unconvincing. Though the contest rules do provide weights for the judging criteria, they are silent as to whether judges were required to assign numerical scores to each entry. Other than laying out the criteria by which entries were to be evaluated, the rules did not otherwise cabin the judges' discretion. Consequently, the judges had discretion to proceed in the manner they thought best. In doing so, the judges decided that entries not using a FaaS solution would categorically not work. It may be that, as Mr. Frankel argues, the judges were mistaken in their belief that other solutions, such as Mr. Frankel's, would be unsuccessful (although it is not clear that Mr. Frankel proposed a true blocking solution). But, even assuming the judges were mistaken, they acted in accordance with the published judging criteria. This is not a "gross mistake" or "irregularity." *Cf. Minton v. F.G. Smith Piano Co.*, 36 App. D.C. 137, 147–48 (Ct. App. 1911) (finding a breach of contest terms when the judges went beyond the judging criteria by adding "neatness and legibility" requirements when, under the contest rules, judges were only required to evaluate a numerical entry for correctness).

Because Mr. Frankel is unable to show "fraud, irregularity, intentional misconduct, gross mistake, or lack of good faith involved in the contest," any other breach of contract claim based on the judging process is barred by the contest's limitation of liability clause. Therefore, the Court of Federal Claims correctly granted summary judgment in favor of the government on Mr. Frankel's breach of contract claim.

## Conclusion

For the foregoing reasons, the judgment of the Court of Federal Claims is affirmed.

## AFFIRMED

C OSTS

Each party shall bear their own costs.