NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HAWAIIAN DREDGING CONSTRUCTION COMPANY, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1909

---

Appeal from the United States Court of Federal Claims in No. 1:22-cv-00339-CNL, Judge Carolyn N. Lerner.

---

Decided: February 19, 2025

---

MICHAEL ZISA, Peckar & Abramson, P.C., Washington, DC, argued for plaintiff-appellant.

RUSSELL JAMES UPTON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., PATRICIA M. MCCARTHY.

---

2    HAWAIIAN DREDGING CONSTRUCTION COMPANY, INC. v. US

Before DYK, CLEVENGER, and PROST, *Circuit Judges*.

PROST, *Circuit Judge*.

Hawaiian Dredging Construction Company ("HDCC") appeals a decision from the United States Court of Federal Claims ("CFC") granting the government's Rule 12(b)(6) of the Rules of the CFC ("RCFC") motion to dismiss HDCC's complaint for failure to state a claim upon which relief can be granted. *See Hawaiian Dredging Constr. Co., Inc v. United States*, No. 22-339, 2023 WL 1979542 (Fed. Cl. Feb. 14, 2023) ("*Opinion*"). For the reasons that follow, we agree with the CFC's conclusion that HDCC has not pled sufficient facts to demonstrate excusable delay regarding its retaining wall construction, but disagree that the alleged government delays regarding the Rights of Way ("ROWs") delivery and utility relocation related claims, as well as HDCC's repayment claim, are ripe for granting the government's motion to dismiss under RCFC 12(b)(6). We also conclude that HDCC's claim that the final ROWs delivered by the government differed from the ROWs as stated in the request for proposals should not have been dismissed. We thus affirm in part, reverse in part, and remand for further proceedings.

BACKGROUND

The United States Department of Transportation, acting through the Federal Highway Administration, Central Federal Lands Highway Division ("the agency"), selected HDCC as a general contractor for the Lahaina Bypass 1B-2 design-build construction project in Lahaina, Maui, Hawaii ("the Project"). The Project was to relocate the terminus of the Lahaina Bypass, which included roadway extensions, overpass, culvert construction, and the installation of road and bridge safety features. On June 3, 2016, the agency awarded HDCC a firm fixed-price contract to complete the Project and issued a notice to proceed ("NTP") on June 29, 2016, to begin work.

While HDCC's contract work was substantially completed by July 24, 2018, on July 17, 2020, HDCC filed a Contract Disputes Act ("CDA") claim requesting an "equitable adjustment for various delays and increased costs during its [c]ontract performance." *Opinion*, 2023 WL 1979542, at *3. HDCC alleged that it required final ROWs from landowners near the highway, relocation of overhead utilities, and construction permits; and the government's "failure to secure the ROWs in a timely manner," and differences between the final ROWs and the ROWs proposed in the request for proposals ("RFP"), caused HDCC to suffer construction delays and increased costs. *Id.* HDCC also alleged that it experienced excusable delays due to government changes and additions to the contract work relating to the retaining wall construction.

On March 30, 2021, the contracting officer ("CO") issued its final decision denying HDCC's CDA claim. J.A. 53–146. On March 29, 2022, HDCC filed its complaint at the CFC, followed by an amended complaint, seeking $6,576,968 in damages and specific costs, 190 compensable and excusable days of delay, and 482 days of excusable delay.

The government moved to dismiss the amended complaint under RCFC 12(b)(6) for failure to state a claim upon which relief may be granted because "HDCC bore the risk of increased costs" under the terms of the contract. J.A. 1622. The CFC found that HDCC "failed to plausibly allege that there were [g]overnment directed changes to the [c]ontract" because "[w]hat HDCC interprets as changes are, in fact, obstacles that arose during contract performance which deviated from assumptions HDCC held at the time of its bid." *Opinion*, 2023 WL 1979542, at *10. The CFC concluded that the amended complaint does not state a claim upon which relief may be granted and granted the government's motion to dismiss without prejudice. *Id.* at *11.

4    HAWAIIAN DREDGING CONSTRUCTION COMPANY, INC. v. US

HDCC timely appealed.  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

"We review the Court of Federal Claims' legal conclusions de novo and its factual findings for clear error." *Shell Oil Co. v. United States*, 896 F.3d 1299, 1306 (Fed. Cir. 2018).  Contract interpretation is a question of law that we review de novo. *Pac. Gas & Elec. Co. v. United States*, 536 F.3d 1282, 1284–85 (Fed. Cir. 2008) (citing *Winstar Corp. v. United States*, 64 F.3d 1531, 1540 (Fed. Cir. 1995) (en banc), *aff'd*, 518 U.S. 839 (1996)).  "We review a grant of a motion to dismiss for failure to state a claim de novo.  To withstand a motion to dismiss under Rule 12(b)(6) of the RCFC, a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Frankel v. United States*, 842 F.3d 1246, 1249 (Fed. Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "In deciding a motion to dismiss, a court is required to accept as true all factual allegations pleaded." *Id.*

On appeal, HDCC argues that the CFC erred in (1) dismissing HDCC's amended complaint under RCFC 12(b)(6), (2) dismissing a portion of HDCC's claims that were not subject to the motion to dismiss, and (3) denying its motion for reconsideration of and/or relief from the order of dismissal and its motion for leave to amend.  We address each argument in turn.

I

HDCC alleges that because it "experienced numerous impacts and delays that were caused by the [g]overnment," it may seek to recover time and costs associated with government impacts and delays.  Appellant's Br. 5.  Specifically, HDCC argues that the CFC erred in granting the government's motion to dismiss because the CFC did not accept all of HDCC's well pled factual allegations as true in the light most favorable to HDCC, including that the

government caused project schedule delays which prevented HDCC from timely completing the contract with regard to (a) work requiring ROWs, (b) utility relocation, and (c) retaining wall construction.  J.A. 29–32.

A

Turning to the work requiring ROWs, HDCC argues that the government "failed to timely provide the final ROW for the Project," and "when the [g]overnment finally provided the final ROW four months after issuing the NTP, it was materially and unforeseeably different from the ROW that was included in the RFP and upon which HDCC had based its bid and developed its design." Appellant's Br. 13.  Such "failure to timely secure and provide the final ROW," according to HDCC, "constituted a constructive change because it forced HDCC to perform additional work and caused delays to HDCC's performance." *Id.* at 23.

The government argues that "HDCC failed to point to any provision of the [c]ontract requiring the agency to timely secure the final ROWs by any particular date certain, and also failed to identify any changes to ROWs." Appellee's Br. 31–32.  Additionally, the contract incorporated Federal Acquisition Regulation ("FAR") 52.236-7, which states:

> The Contractor shall, *without additional expense to the Government*, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work.

*Id.* at 5 (emphasis in original); *see also Opinion*, 2023 WL 1979542, at *2; J.A. 1473.  The government contends that the contract "required HDCC to '[p]repare [ROW] plans and any legal description[] documents to facilitate the final acquisition of the design and permanent right of way to accommodate the maintenance and operation of the facility

by . . . [Hawaii Department of Transportation].'" Appellee's Br. 5–6. According to the government, because "the [c]ontract was a firm fixed-price contract[,] HDCC, therefore, assumed the risk of any delays or increased costs, including the risk of contractually specified liquidated damages, in the even that HDCC failed to fulfill its obligations in the time required." *Id.* at 22 (citations omitted).

In response, the CFC rejected HDCC's argument and found that while the contract "assigns the [g]overnment responsibility to obtain title to ROWs, it does not specify a date by which the [g]government was required to do so. Thus, HDCC is wrong to allege that the [g]overnment caused unforeseeable, and therefore excusable, delays in contravention of its express duties under the contract." *Opinion*, 2023 WL 1979542, at *6 (cleaned up). We disagree that this conclusion should be drawn here on a RCFC 12(b)(6) motion to dismiss when HDCC has pled facts to the contrary.

When interpreting a contract, we "begin[] with the language of the written agreement." *Bell/Heery v. United States*, 739 F.3d 1324, 1331 (Fed. Cir. 2014) (citation omitted). Contemporaneous evidence of the parties' understanding may also be examined to confirm the plain meaning of the contract. *TEG-Paradigm Env't, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006) (citing *Coast Fed. Bank FSB v. United States*, 323 F.3d 1035, 1040 (Fed. Cir. 2003) (en banc)). And the "time, place and manner of delivery, if not specified in the contract or by subsequent agreement of the parties, should be a reasonable time, place and manner that enables the contractor to perform under the contract." *Franklin Pavkov Constr. Co. v. Roche*, 279 F.3d 989, 997 (Fed. Cir. 2002).

The government's contract with HDCC states, in two relevant sections, that:

The Contractor shall be responsible for all work as described in these RFP documents. The scope of

> work includes design, construction, maintenance
> during construction, project management, project
> scheduling, quality control/quality assurance for
> design and construction, materials sampling and
> testing, obtaining permits (see FP Section 107),
> and coordination with other governmental agencies
> and entities including federal, state, local govern-
> ments, and communication with the public regard-
> ing ongoing and upcoming construction activities.

J.A. 1448 (Contract Terms and Conditions).

> Fully design the highway and construction limits
> to fit within the designated right of way (ROW) and
> future dedication of deed.  Design the roadway in
> accordance with Chapter 9—Highway Design,
> 2005 Project Development and Design Manual.  An
> initial alignment has been provided.  The align-
> ment, vertical and horizontal, may be altered as
> long as the construction limits remain within the
> ROW described for Alternative 3 and meets the
> AASHTO design criteria for a Principal Rural Ar-
> terial Roadway . . . .

J.A. 1528 (111.05. Geometric Requirements).

Based on the contract language, HDCC was required to "fully design the highway and construction limits" to fit within designated ROWs, with alignment alterations permitted "as long as the construction limits remain within the ROW described for Alternative 3." *Id.*  However, it is undisputed that the contract obligated the government to "obtain right-of-way," not HDCC.  J.A. 728.  *See* Appellee's Br. 3–4.  Because the timeframe for the government to procure ROWs to the contractor was "not specified in the contract," the government was still obligated to provide the ROWs in a "reasonable time, place and manner that enables the contractor to perform under the contract." *Franklin*, 279 F.3d at 997–98.  Here, the government provided the ROWs four months after it issued its NTP.  Whether

that timing was "reasonable" or "foreseeable" is a fact-intensive inquiry. So too was the question of whether the final ROWs delivered by the government materially deviated from those specified in the RFP. Such determinations are not proper under RCFC 12(b)(6). *See Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311, 1321 (Fed. Cir. 2011) ("[F]oreseeability of an event is a traditional issue of fact."); *see also Coop. Entm't, Inc. v. Kollective Tech.*, Inc., 50 F.4th 127 (Fed. Cir. 2022) ("[A] question of fact . . . cannot be resolved at the Rule 12(b)(6) stage."). Moreover, "[t]he government must avoid actions that unreasonably cause delay or hindrance to contract performance." *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1542 (Fed. Cir. 1993). We therefore reverse and remand these issues for further proceedings.

B

Next, we address HDCC's argument regarding the utility relocation. HDCC argues that the CFC "ignored the allegations in the [c]omplaint" "that the [g]overnment's failure to timely execute agreement with utility companies as required by the [c]ontract caused delays to HDCC's performance." Appellant's Br. 29. In its complaint, HDCC alleged that it "provided the required utility agreements to the [g]overnment on August 3, 2017[,] but the [g]overnment did not return the executed agreements until February 28, 2018—209 days later." *Id.* at 30 (citations omitted). In its amended complaint, HDCC alleges that the government was responsible for the "unforeseen delay of having to wait for the local utility service providers to approve and perform utility relocations." J.A. 31. Such failure and resulting delay, according to HDCC, "constituted a breach of [the government's] express obligation under the [c]ontract" and a "breach[] [of] the duty of good faith and fair dealing." *Id.* at 30.

The government argues that HDCC was responsible for the utility work because the contract "also required HDCC

to 'prepare utility agreements for [execution by the government],' and '[c]ooperate with utility owners to expedite the relocation or adjustment of their utilities to minimize interruption of service, duplication of work, and delays if relocations or adjustments are needed.'" Appellee's Br. 6; *see also Opinion*, 2023 WL 1979542, at \*2; J.A. 385. According to the government, the contract contained no obligation for the government to compel third-party utility companies to expedite utility relocations. *See* Appellee's Br. 38. Citing *Bell/Heery*, the government contends that "[w]hen considering a motion to dismiss for failure to state a breach of contract claim, 'the court must interpret the contract's provisions to ascertain whether the facts plaintiff alleges would, if true, establish a breach of contract.'" *Id.* at 18 (quoting *Bell/Heery*, 739 F.3d at 1330).

The CFC disagreed with HDCC and found that "HDCC points to no contractual provision or authority obligating the [g]overnment to compel third-party utility companies to complete utility relocations within HDCC's preferred schedule." *Opinion*, 2023 WL 1979542, at \*8. The CFC determined that because the "firm fixed-price nature of the [c]ontract assigned HDCC the risk of utility relocation delays," HDCC "does not allege facts demonstrating that these delays were excusable due to the [g]overnment's acts or omissions in violation of the contract's express terms or the implied duty of good faith and fair dealing." *Id.* Again, we disagree that this conclusion can be drawn on a motion to dismiss under RCFC 12(b)(6), particularly when the underlying facts remain in dispute.

In its amended complaint, HDCC alleges that the government was responsible for the "unforeseen delay of having to wait for the local utility service providers to approve and perform utility relocations." J.A. 31. Whether a 209-day period to return the executed agreements was reasonable under the duty of good faith and fair dealing, and/or foreseeable to HDCC, is a factual determination. Further, as noted with regard to the ROWs delivery, *see*

Discussion I.A., caselaw supports that even silence implies a standard of reasonableness on the government. For the same reasons discussed above, we conclude that the CFC erred in dismissing this claim under RCFC 12(b)(6) and reverse and remand for further proceedings.

C

As to the retaining wall construction, HDCC argues that retaining wall work delays are also subject to relief because "there was additional change order work associated with the neighboring Castleton and MECO properties." Appellant's Br. 31. According to HDCC, it could not proceed with the retaining wall work on the MECO property "until the [g]overnment issued approved contract modifications" that set forth the change order. *Id.* After HDCC was not ultimately awarded the Castleton wall work, HDCC contends that it incurred a 482-day "standby" due to the government's "delayed approval of the modifications." *Id.*

The government responds that HDCC admitted "that the agency 'instructed HDCC not to perform the Castleton wall work (and the [g]overnment awarded the work to another contractor).'" Appellee's Br. 39 (quoting Appellant's Br. 31). Because, according to the government, the Castleton wall work was not required by the contract, it was HDCC that "'chose to delay' the MECO wall work" as "an economic decision." Appellee's Br. 40 (quoting J.A. 208–09).

The CFC found that the "alleged facts, even when taken as true, indicate that HDCC intentionally contributed to the delay and that HDCC did not continue to perform the contract despite its pending disputes with the [a]gency." *Opinion*, 2023 WL 1979542, at *10. Therefore, because HDCC "chose to delay performance" and "had control over the schedule," the CFC concluded that HDCC had not pled sufficient facts to demonstrate excusable delay. *Id.* We agree.

The FAR provision governing fixed-price construction states that:

> The Contractor's right to proceed shall not be terminated nor the Contractor charged with damages under this clause, if—(1) The delay in completing the work arises from *unforeseeable causes beyond the control and without the fault or negligence of the Contractor*. Examples of such causes include . . . acts of the Government in either its sovereign or contractual capacity. . . .

48 C.F.R. § 52.249-10 (emphasis added).

Here, HDCC mischaracterizes its "standby" as a government caused delay. Yet, HDCC admits it decided to wait for the government issued approved contract modifications and award of the Castleton work, which HDCC ultimately was not awarded. Even if such event was unforeseeable, per 48 C.F.R. § 52.249-10, such decision and schedule was within the control of HDCC. Accordingly, HDCC does not sufficiently demonstrate that it has a claim upon which relief can be granted. We therefore affirm the CFC's decision granting the government's motion to dismiss this claim.

II

Next, we turn to HDCC's argument that a portion of its claims were not subject to the motion to dismiss because neither the CFC nor the government addressed these claims. Specifically, HDCC contends that the CO's final decision "wrongly purported to rescind a previously approved and paid contract modification in breach of contract without proper authority or procedure." Appellant's Br. 35 (quoting J.A. 31). As the government acknowledged, this repayment claim is related to the utility-relocation work discussed in Discussion I.B., above. *See* Appellee's Br. 43–44 ("HDCC's repayment claim is directly related to its claim regarding utility relocation costs."). Given this

acknowledgment, and based on our reversal of the motion to dismiss HDCC's complaint for utility delays and payment, *see* Discussion I.B., we also reverse and remand this issue to the CFC.

## III

Finally, HDCC argues that the CFC erred in its decision to deny HDCC's motion for reconsideration of and/or relief from the order of dismissal and its motion for leave to amend its complaint. Because we reverse and remand the CFC's determination on the motion to dismiss, as explained above, we need not address the CFC's denial of these motions.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

### COSTS

Costs to HDCC.